376 So.2d 1009 (1979)
Joseph POLOZOLA
v.
GARLOCK, INC., et al.
No. 12772.
Court of Appeal of Louisiana, First Circuit.
October 8, 1979.
Rehearing Denied November 29, 1979.
*1010 H. Alva Brumfield, III, Baton Rouge, for plaintiff-appellee, Joseph Polozola.
Boris F. Navratil, Baton Rouge, for defendants and third-party plaintiffs-appellees, Jon Kiggans, David F. Schneblen, Jr., Bill H. Garlington and Assoc. Indem. Corp.
Gerald L. Walter, Jr., Baton Rouge, for third-party defendants-appellants, H. E. Wiese, Inc. and Hartford Acc. & Indem. Co.
John W. Swanner, Baton Rouge, for defendant-appellant, National Maintenance Co.
Before COVINGTON, LOTTINGER and COLE, JJ.
COVINGTON, Judge.
This is an appeal by third party defendants, National Maintenance Corporation and H. E. Wiese, Inc., and Wiese's insurer, Hartford Accident and Indemnity Company, from a judgment against them in favor of third party plaintiffs, Jon (John) Kiggans, David Schneblen, Bill Garlington, and their insurer, Associated Indemnity Corporation, granting indemnification under the maintenance contracts between Dow Chemical Corporation and National Maintenance and Wiese.
The parties to this litigation have agreed to certain stipulations of fact. As explained in the stipulations, the plaintiff, Joseph Polozola, sustained an on-the-job injury at the plant of Dow Chemical Company in Plaquemine, Louisiana, on August 20, 1971, when he was struck in the face by a jet of liquid propylene oxide which shot out from a valve flange on a pipeline on which he was working, causing him to lose one eye, suffer impairment of vision to the other, and also deforming facial injuries. Polozola was a pipefitter, an hourly employee carried on the Wiese payroll, and was, at the time of the injury, working in the area of Dow's facility generally assigned to National Maintenance. Polozola's direct supervisor at that time was John R. Thibodaux, Jr., a pipefitter foreman who was also carried on the Wiese payroll. Polozola was performing the particular task at the direction of Bill Garlington, an employee of Dow. It was stipulated that the accident occurred due to the failure of the Dow employees, Garlington, Kiggans and Schneblen, to engineer the modification in the pipeline with the proper safety pressure release mechanism and that this negligence on their part was a proximate cause of the injuries to the plaintiff.
*1011 Plaintiff brought suit against Garlock, Inc., manufacturer of the valve, National Maintenance Corporation, Cecil Voth, a supervisor of National Maintenance, Jon Kiggans, David Schneblen, and Bill Garlington, Dow employees, alleging that their negligence caused his injury. The Dow employees brought third party demands seeking indemnification from National Maintenance, Wiese and Wiese's insurer.
Prior to the trial of his claim, Polozola entered into a settlement with the Dow employees and their liability insurer. Polozola's suit was dismissed and all rights were reserved to the Dow employees to pursue their indemnity action against the two maintenance contractors.
At the time of the accident, there were two maintenance contracts for the performance of maintenance work on the premises of Dow: one between Dow and National Maintenance, and the other between Dow and Wiese. The Dow facility was divided into two areas for purposes of maintenance, with one area generally assigned to National Maintenance and the other to Wiese. The accident which caused the plaintiff's injury occurred in the cellulose block located in the National Maintenance area.
In addition, it was stipulated that certain craft workers were hired by only one of the two maintenance contractors, e. g., all carpenters were hired by National Maintenance and all pipefitters, such as Polozola, were hired by Wiese. If a pipefitter was needed in the National Maintenance area, one would be supplied by Wiese, and if a carpenter was needed by Wiese, one would be supplied by National Maintenance. Even if a Wiese or National Maintenance employee was working in an area assigned to the other maintenance contractor, the employee remained on the payroll of his contractor for all purposes and that contractor would bill Dow for those services regardless of the area in which the employee actually worked. Concerning the accident giving rise to the suit, it was stipulated that Polozola was carried on the Wiese payroll and Wiese billed Dow for the work done by Polozola and derived the profit from that work.
The third party demand was submitted to Judge McGehee, Division I, Nineteenth Judicial District Court, Parish of East Baton Rouge, Louisiana, on the written stipulation and certain exhibits. On September 28, 1978, Judge McGehee rendered written reasons for judgment, finding that under their indemnity agreements, both National Maintenance and Wiese were solidarily liable to the Dow employees and their insurer. Thereafter, Judge McGehee resigned (retired) from office and a formal judgment was rendered and signed on January 26, 1979, by Judge Brown, who had succeeded Judge McGehee in office as Judge of Division I of the Nineteenth Judicial District Court. Appeals from the judgment were taken by National Maintenance and Wiese, as mentioned above.
The appellants raise the technical objection that the judgment was signed by the successor judge to the trial judge rather than by the trial judge, so that the judgment appealed from is invalid. The judgment in the record in the instant case shows that Judge Brown, successor in office to Judge McGehee, read, rendered and signed the judgment. The judgment states that the successor judge, "having considered the pleadings, the evidence submitted in the form of stipulations agreed upon by the parties, the arguments and briefs filed on behalf of the litigants and considering the law and the evidence to be in favor thereof, for reasons assigned in the written opinion handed down on September 28, 1978, rendered judgment as follows . . .". We thus find that Judge Brown, successor in office to Judge McGehee, complied with the requisites of the applicable statute, LSA-R.S. 13:4209; and, therefore, we hold that the judgment is valid. See also LSA-C.C.P. art. 1911. The instant case is clearly distinguishable from Ledoux v. Southern Farm Bureau Casualty Insurance Company, 337 So.2d 906 (La.App. 3 Cir. 1976), where a judge of one division, not a successor in office, signed a judgment in a case which had actually been decided by a judge of another division of court. LSA-R.S. *1012 13:4209 is not applicable to that situation, as the Ledoux Court properly held, but the statute does apply to the situation where a judge resigns and there is a successor judge, as in the instant case.
The next issue before the Court is whether or not Polozola remained the employee of Wiese or became a "borrowed employee" of National Maintenance. The trial court considered that Polozola remained an employee of Wiese and did not become a "borrowed employee" of National Maintenance because (1) Polozola remained on the Wiese payroll; (2) Wiese made all necessary deductions and payments for income taxes and social security; (3) Wiese's remuneration under its maintenance agreement with Dow was based in part upon Polozola's salary; and (4) only Wiese could terminate Polozola's employment. The trial court based its decision upon the following factors:
First, his general employer (Wiese) bore the burden of showing that Polozola had in fact been "borrowed" by National Maintenance, and Wiese had failed to discharge that burden. Nichols Construction Corporation v. Spell, 315 So.2d 801 (La.App. 1 Cir. 1975). Second, unlike cases in which the status of "borrowed employee" was found, National Maintenance was not in complete or direct control of the methods of Polozola's work, or even in control as to the places where he was to work. Compare Brown v. B & G Crane Service, Inc., 194 So.2d 746 (La.App. 4 Cir. 1967). Under similar facts in Nichols, the employee was held not to have been borrowed when he was given instructions as to what the special employer desired of him, but the method of work was left primarily to him. Nichols Construction Corporation v. Spell, supra. Polozola was not paid by National Maintenance, and Wiese was not paid anything by National Maintenance for his time. Compare Gaspard v. Travelers Insurance Company, 284 So.2d 104 (La.App. 3 Cir. 1973). Finally, Wiese's profit on its maintenance contract was based upon Polozola's wage, no matter where he worked, so that his work inured primarily to the economic benefit of Wiese, not to National Maintenance. In this regard, the present factual situation is less supportive of the general employer's position than the facts in the case of Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951). In that case, an oil driller made a contract with Hunt Tool to supply welders for the driller's operations at a fixed price. The welders were selected, employed and paid by Hunt Tool. The driller gave instructions as to what objects were to be welded and specified the hours of work. The methods of doing the work were determined by the tool company due to the specialized nature of the work. A welder under this arrangement was regarded by the Court as still the employee of the tool company, not a borrowed employee of the driller. In the instant case, National Maintenance (like the Benoit driller) had a contractual responsibility and called upon a specialized employee of another company to discharge it. It could have given instructions as to the objects of the work and probably fixed the hours of work, but the method of work remained primarily up to the employee (Polozola) or Wiese. National Maintenance did not pay Wiese a stipulated price for the employee, as did the driller in Benoit. In fact, National Maintenance paid nothing at all directly to the employee, or to Wiese; and moreover, Wiese derived the economic benefit from the employee's work.
In Nichols Construction Corporation v. Spell, supra, the Court said:
"There is a legal presumption that the general employer retains control over his regular employees. A party who alleges or contends that the employee has become the `borrowed servant' of another bears the burden of proof. He must establish by a preponderance of the evidence that the right of the general employer to control the employee has terminated, and that the right to control him has been assumed by the borrowing employer. A mere showing of a division of control is not sufficient to meet this burden of proof (citations omitted)."
The trial court found, and we agree with his finding, that Wiese failed to establish by a preponderance of the evidence that *1013 Polozola had become a "borrowed employee" of National Maintenance at the time of the accident. At most Wiese showed a "division of control," which is insufficient to meet its burden of proof.
Although we find that Polozola was not a borrowed employee of National Maintenance, it does not necessarily follow that National Maintenance has no liability for the injuries sustained by Polozola, because the Dow employees also claim indemnification from National Maintenance based on Article VI of the Dow-National Maintenance contract, which provides as follows:
"6.1 Contractor assumes the entire responsibility and liability, and will protect, indemnify, and hold harmless Dow, its agents, servants, and employees from and against any and all losses, expenses, demands, and claims made against Dow, its agents, servants, and employees, by Contractor, or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors because of injury or alleged injury (including death), whether caused by Dow's negligence or otherwise, arising from any source while Contractor or its subcontractors or any employee, agent, or servant of Contractor or its subcontractors are on premises owned, operated or leased by Dow or under the control of Dow, or while Contractor or its subcontractors or any employee, agent, or servant of Contractor or its subcontractors are performing under this agreement, and Contractor agrees to defend any suit, action, or cause of action brought against Dow, its agents, servants, or employees, based on any such alleged injury, and to pay all damages, costs, and expenses, including attorneys' fees, in connection therewith or resulting therefrom.
"6.2 For purposes of this agreement, a person shall be an employee of the employer from whom said employee receives his pay, regardless of whether said employee is loaned to, or performing services under the direction and control of another, and the employer who pays said employee shall be fully responsible for the negligence of said employee in the conduct of his work."
National Maintenance contends that the trial court erred in interpreting the indemnity agreement between Dow and National Maintenance so as to find that Polozola was a third person who was injured while National Maintenance was performing under its maintenance agreement with Dow and also so as to find that there was a relationship between Polozola's work and the maintenance responsibility of National Maintenance.
The question of whether National Maintenance agreed to indemnify Dow against the consequences of Dow's negligence has already been decided by our Supreme Court, against the National Maintenance position. Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977). The next question is whether that agreement applies to the present case.
The National Maintenance contract, in pertinent part, indemnifies Dow from claims and losses by the Contractor, its subcontractors, or the employees, agents or servants of either the Contractor or its subcontractors "arising from any source" while the contractor is on the premises or "while Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors are performing under this agreement . . ."
According to the stipulations, National Maintenance was responsible for general maintenance in its particular area. Its contract required such maintenance, and did not limit the responsibility merely to carpenter-work maintenance, or any other specific maintenance. Its contract required it to provide maintenance needing pipefitters as well as carpenters and other crafts. In discharge of that responsibility, and clearly in "performing under this agreement", National Maintenance followed the necessary procedures to have a pipefitter on hand in its maintenance area for direction by Dow personnel. The fact that this arrangement may have been of long standing, or that on a particular day a National Maintenance employee had not repeated the request or given specific instructions does not change the fact that the pipefitter on hand was a "third person" who was injured while the *1014 Contractor was "performing" under the Agreement. There was a clear relationship between Polozola's work and the maintenance responsibility of National Maintenance under its contract with Dow.
On the other hand, Wiese contends that the trial court erred in interpreting the indemnity agreement between Dow and Wiese so as to require Wiese to defend and indemnify Dow and its employees from the consequences of their own negligence.
The claim of the Dow employees for indemnification from Wiese is based on Article VIII of the Dow-Wiese contract. This article provides as follows:

"ARTICLE VIII
"Contractor agrees to indemnify and hold harmless Dow, its officers and employees, from and against any and all claims and causes of action and all losses therefrom, arising out of or in any way related to the performance by Contractor or any sub-contractor of Contractor of services hereunder, including without limitation any such claims for personal injury or death or property damage or destruction or urged by employees of Dow, employees of Contractor, any sub-contractor, and employees of any sub-contractor of Contractor, or all third parties whomsoever. This indemnity obligation of Contractor shall further extend to and include any and all claims made against Dow by any employees of Contractor, or any sub-contractor or any employee of any sub-contractor, arising from any source while any such party is on premises owned, operated, leased or controlled by Dow."
Agreements of the type at issue in this case fall into three general categories: (1) those that specifically mention in some way that the indemnitor will indemnify the indemnitee against the indemnitee's own negligence; [See e. g., Polozola v. Garlock, Inc., supra]; (2) those that specifically mention in some way that the indemnitor will not indemnify the indemnitee against the indemnitee's own negligence [see e. g., Green v. Taca International Airlines, 304 So.2d 357 (La.1974)]; and (3) those that are silent on that specific subject, but contain other language that might be so construed. The Wiese agreement falls in the third category, and must be interpreted according to its own peculiar language.
Wiese contends that in the absence of the talismanic words "even though caused by the negligence of indemnitee", an indemnification agreement can not be interpreted to require the indemnitor to indemnify the indemnitee against its own negligence. The Court does not find this contention to be an accurate depiction of the present state of the law. Of the cases usually cited to support this proposition, some actually contained specific reference to negligence and can hardly be considered authority for what the court might have done in the absence of such language, e. g., Lee v. Allied Chemical Corporation, 331 So.2d 608 (La.App. 1 Cir. 1976), writ denied, 337 So.2d 525 (La.1976). In others, although the indemnity agreement was silent, the indemnitor was held to indemnify the indemnitee against his own negligence, e. g., Jennings v. Ralston Purina Company, 201 So.2d 168 (La.App. 2 Cir. 1967), writ denied, 251 La. 216, 203 So.2d 554 (1967).
As the Court in Lee v. Allied Chemical Corporation, supra, stated:
"We believe that the import of Arnold v. Stupp Corp. (La.App., 205 So.2d 797), and those of similar holding to be that the absence of the words `negligence of the indemnitees' is evidence of the intent not to cover such negligence. However, the real question posed is that of the intent of the parties, and the intent so to cover has been found even in the absence of the magic words."
The effect to be given to the indemnity agreement under consideration in the present matter depends upon the intention of the parties, which is the foremost requirement in the interpretation of any contract. LSA-C.C. art. 1945.
The Court concludes that each agreement must be interpreted according to its intended meaning, and that the absence of a specific reference to the indemnitee's "negligence" *1015 is not decisive either way. In the instant case, the Court concludes that the intent of the parties was that Wiese was to indemnify Dow for the consequences of Dow's own negligence, for the following reasons.
First. The language of the indemnity clause is broad and general, virtually without limitation. It is quite similar to that in cases in which an indemnity agreement not mentioning the indemnitee's negligence has been held to cover such negligence, and is on the other hand broader and more inclusive than those not mentioning such negligence which have been held not to cover such negligence. Specifically, the agreement provides in pertinent part that Wiese will indemnify Dow "from and against any and all claims and causes of action and all losses therefrom, arising out of or in any way related to the performance"[1] by Wiese of services under the agreement, "including without limitation" any such claims for personal injury urged by "employees of Contractor." A second sentence adds that this indemnity obligation "shall further extend to and include any and all claims made against Dow by any employees of Contractor. . . arising from any source while any such party is on premises owned, operated, leased or controlled by Dow." Such a broad agreement of indemnity is similar to those extended to the indemnitee's negligence in Jennings v. Ralston Purina Company, supra, ("Contractor shall. . . indemnify . . . Company from any loss, damage, liability and expense for all injuries . . . directly or indirectly arising or growing out of the performance of this Contract except loss . . . under . . . fire and extended coverage insurance. Contractor shall hold Company harmless from . . . any loss, damage or injury sustained by any person resulting from the performance of this Contract.") Indeed, the Dow-Wiese agreement includes language which is, if anything, broader than these agreements: "any and all claims" rather than "any liability", and reference to "including without limitation" any personal injury claims made by employees of the Contractor. It also contains the phrase, "claims made against Dow by any employees of Contractor . . . arising from any source . . .." This can not be a reference to the person bringing the claim, since that is already specified; it must mean the basis for the claim. As mentioned above, the present language is broader than that construed as not extending to the indemnitee's own negligence. Gorsalitz v. Olin Mathieson Chemical Corporation, 429 F.2d 1033 (5th Cir. 1970) (limited to claims "occasioned by" Contractor's employees or subcontractors); Breaux v. Rimmer & Garrett, Inc., 320 So.2d 214 (La.App. 3 Cir. 1975) (contract contained numerous specific descriptions of what was indemnified against); Arnold v. Stupp Corporation, 205 So.2d 797 (La.App. 1 Cir. 1967) (no language such as "without limitation" or "arising from any source"). From these two groups of cases, the Court concludes that the present agreement is much more like the first, and perhaps more inclusive than those in the first; and certainly distinguishable from the second.
Second. Other portions of the Dow-Wiese agreement indicate that it was intended that Wiese indemnify Dow for Dow's own negligence. Article X required Wiese to carry designated amounts of insurance, including general liability insurance and required that those policies "shall include, by endorsement, Contractor's indemnity obligations assumed hereunder." Such a provision was regarded in Jennings, supra, as an indication that the parties meant for the Contractor to protect against the Owner's negligence. Further, Article X provides that the insurance underwriters secured by the Contractor "shall waiver (waive) subrogation against Dow and its underwriters . . .." This phrase makes no sense unless it was the intent of the parties that Wiese rather than Dow would bear the consequences of Dow's negligence as it affected Wiese's employees.
*1016 All clauses of a contract should be interpreted the one by the other, giving to each the sense that results from the entire agreement. LSA-C.C. art. 1955.
Third. The stipulation reveals that Dow paid both maintenance contractors the same percentage over the wages of the maintenance employees involved, to cover overhead, insurance and profit. If Wiese's interpretation of the agreement were to be accepted, this would mean that Dow paid an identical percentage to two maintenance contractors who assumed decidedly different risks. National Maintenance was paid a 24% figure and assumed the consequences of Dow's negligence. Wiese was paid a 24% figure, but according to Wiese, did not assume the consequences of Dow's negligence. This Court can not accept the contention that Dow would pay the same amount for two such different undertakings by the maintenance contractors. We believe the equal percentage amounts further support the conclusion that the parties intended the two maintenance agreements to accomplish the same results, regardless of the particular language used to express the agreement.
Fourth. These parties should have known how to write, and could have written, a contract which would have specifically excluded coverage by Wiese of the consequences of Dow's negligence, if that were their intention. In this connection, we consider the agreement entered into between this same maintenance contractor (Wiese) and a major chemical corporation (Shell) for the same type of work in the same general area, as discussed in Pearson v. Hartford Accident and Indemnity Company, 345 So.2d 123 (La.App. 1 Cir. 1977), writ refused, 347 So.2d 255, 256 (La.1977), as follows:
". . . Wiese shall . . . indemnify Shell . . . against all claims of and liability to third parties . . . except where such injury . . . has resulted from the negligence of Shell without negligence or fault on the part of Wiese or any of their subcontractors, in which case this clause shall not apply, and further provided that where such injury. . . has resulted from the contributory negligence of Shell, Wiese's responsibility for that portion of the claim attributable to Shell shall be limited to (certain amounts) . . ."
Thus, the Court concludes, as did the trial court, that Wiese and Dow agreed that Wiese would indemnify Dow in the circumstances which prevailed in the instant case. The purpose of the indemnity agreement, considered as a whole, was to make Wiese liable for matters within its orbit of responsibility.
It follows that both Wiese and National Maintenance agreed to indemnify Dow and Dow's employees in the present instance, and they are solidarily liable to the Dow employees and their liability insurer herein. This Court is convinced that this was the intent of the parties when they entered into these agreements. In exchange for a specified percentage over and above total wages paid, Dow sought to place the burden and accompanying risk of maintenance work on maintenance contractors. To perform under these agreements, such contractors would necessarily bring onto the Dow premises an added number of persons and thereby increase the risk of injury. It is certainly understandable that Dow would want its maintenance contractor(s) to agree to bear this risk.
Accordingly, the judgment rendered by the trial court is affirmed at the appellants' costs.
AFFIRMED.
NOTES
[1] Emphasis here, and elsewhere in this opinion, when quoting from the pertinent contracts, is supplied by the court.