**MARITIME OVERSEAS CORPORATION, Plaintiff-Appellee,**

v.

**Charles EBNER, Defendant-Appellant.**

**No. 82–2271**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Feb. 10, 1983.

Sidney Ravkind, Houston, Tex., for defendant-appellant.

Thomas B. Greene, III, Robert F. Maher, Houston, Tex., for plaintiff-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

GEE, Circuit Judge:

From June 13, 1980, until the early morning hours of August 29, 1980, Charles Ebner served as Third Mate aboard the S/T OVERSEAS OHIO, under contract with the Maritime Overseas Corporation ("Maritime"). The OHIO is a "baby supertanker" and on this trip was sailing with the United States Coast Guard minimum crew of a captain and three officers, in addition to roughly 23 seamen.

On August 28 and 29, 1980, the OHIO was loading crude oil at the port of Valdez, Alaska. It was scheduled to depart for San Francisco at 6:00 on the morning of August 29. Earlier that same morning, at about 2:00, Ebner entered himself in the medical log as leaving ship to see a doctor.[1] Sometime between 2:00 and 2:30 that morning, the captain of the OHIO, Thomas Haines, observed Ebner on deck with his personal gear. Ebner informed the captain that he intended to leave ship immediately; Captain Haines ordered Ebner to remain on ship and assist in topping off the tanks during the final stage of loading. The captain returned to his duties supervising the loading of the ship.

Ebner disobeyed his captain and the OHIO sailed from Valdez on schedule without its Third Mate. Valdez is a desolate port, and to obtain a replacement officer would have required waiting for one to be flown in from the continental United States. The hire rate of the OHIO is approximately twenty-five thousand dollars a day. Fortunately, the captain obtained special permission from the Coast Guard to sail with less than the required complement of

---

1. Ebner served as medical officer on this voyage. As medical officer, Ebner's duties included filling out injury reports, illness reports, and master's certificates. He also was required to maintain the medical log.

The standard procedure for leaving ship to seek medical attention involves two steps. First, the seaman reports to the medical officer who must make an entry in the medical log and fill out a master's certificate entitling the seaman to free medical attention at a United States Public Health hospital. Second, the certificate should be signed by the captain, but in practice the medical officer often signs it and submits it to the captain so that the captain can have the ill seaman temporarily released from ship to see a doctor. Only after being determined unfit for duty by a medical doctor is a seaman entitled to leave ship.

In this case, Ebner made only an incomplete entry in the medical log and filled out a master's certificate for himself. He did not submit the certificate to his captain. In fact, the district court found that Ebner made no mention to the captain that he was ill or in need of medical attention. He simply stated that he was leaving and left ship roughly thirty minutes later.

three officers. In his log for that day, the captain entered Ebner as a deserter.

Ebner's employer, Maritime, paid Ebner the wages he earned before leaving the ship and his maintenance and cure costs; it has not paid Ebner's transportation costs back to the United States or his unearned wages for the portion of the OHIO's voyage on which he did not serve. Ebner has made a demand to his past employer for these unpaid amounts, claiming that he was justified in leaving the vessel because of illness. In fact, when he returned to the United States he was treated by a private doctor who certified him as unfit for service.

This action is brought by Maritime under the Declaratory Judgment Act seeking a determination that Ebner was a deserter and that he had breached his contract of employment. Ebner filed a counterclaim for transportation costs, unearned wages, statutory penalties, and interest. The district court below entered a judgment for Maritime. The court found that because Ebner was a deserter and had breached his employment contract, he was not entitled to recover his transportation pay and unearned wages. Because we agree that Ebner was a deserter, we affirm on this ground and need not reach the issues of breach of contract, statutory penalties, or interest.

▆ Under federal law, a seaman who deserts his vessel forfeits "all or any part of the wages or emoluments which he has then earned." 46 U.S.C. § 701. Desertion has been defined as (a) a seaman's unconsented (b) abandonment of duty by quitting the ship (c) before the termination of the engagement specified in the articles he signed (d) without justification (e) with the intention of not returning. *The City of Norwich,* 279 F. 687, 698 (2d Cir.1922); *In re Mack,* 330 F.Supp. 737, 738 (S.D.Tex.1970); *In re Russo,* 232 F.Supp. 650, 651 (N.D.Cal.1964).

▆ Haines, as captain of the OHIO, recorded Ebner as a deserter in the ship's official logbook; such an entry creates a prima facie case of desertion. *Mack,* 330 F.Supp. at 738; *In re Landrith,* 298 F.Supp.

1213, 1215 (S.D.Tex.1969). The district court found that Ebner had not overcome this presumption.

The only element of desertion at issue on this appeal is that of Ebner's justification for leaving ship. Ebner asserts that his illness rendered him unfit for duty and that this justified his leaving ship to obtain private medical care. He explains that he was suffering from sinusitis and that he had severe headaches and pain in the facial sinuses, teeth, and jaw making it difficult if not impossible to eat. In fact, immediately after leaving ship in Valdez, on August 29, 1980, Ebner proceeded by commercial airline to his residence in Port Arthur, Texas. There, on September 2, 1980, he received medical treatment which included the surgical removal of a polyp from his nose. Ebner's private doctor determined that Ebner was unfit for duty from September 2 to September 15, 1980.

From these facts, we assume without deciding the question that Ebner would have been entitled to his wages and costs had he given notice of his illness to his captain and received proper certification prior to leaving the vessel. Another question with which we are not faced is what Ebner would be entitled to under these facts had he left ship to seek medical attention after giving adequate notice of his illness to his captain and having been denied certification.

▆ In this case we decide only that where a seaman unilaterally determines to leave ship and gives no notice to his captain that he is suffering from an illness or that he is leaving because of an illness, that illness may not be asserted later as a justification for desertion. Mere notification that he is leaving the ship will not be sufficient to justify desertion. A seaman must respect the special authority of his captain. In order to leave ship before the end of the voyage, a seaman must have his captain's consent. Only the most extraordinary circumstances will justify disregard of the

captain's authority.[2]  As the Supreme Court has explained,

> Ever since men have gone to sea, the relationship of master to seaman has been entirely different from that of employer to employee on land.  The lives of passengers and crew as well as the safety of ship and cargo are entrusted to the master's care.  Every one and every thing depend on him.  He must command and the crew must obey.  Authority cannot be divided.  These are actualities which the law has always recognized.

*Southern Steamship Co., v. NLRB,* 316 U.S. 31, 38, 62 S.Ct. 886, 890, 86 L.Ed. 1246 (1942).

We agree with the district court's finding that Ebner left ship in mid-voyage without his captain's consent.  This constitutes desertion, for which, by statute, Ebner forfeited "all or any part of the wages or emoluments which he has then earned."  46 U.S.C. § 701.  We do not recognize as a justification for desertion, except perhaps under the most extraordinary circumstances, an illness which was never brought to the captain's attention.  We therefore affirm the decision below that Ebner is not entitled to unearned wages and transportation costs.

AFFIRMED.

---

**2.**  We acknowledge an early case which considered insufficient provisions to be a justification for desertion.  *The Forteviot,* 98 F. 440 (W.D.Washington, 1899).  In this case, seamen complained to their captain that they were being fed less food than specified in their contract and insufficient for their comfortable maintenance.  They left ship before the completion of the voyage because they were threatened by the captain with being "starve[d] worse before they got back...."  *Id.* at 441.  Although it is possible that a captain's failure to respond to his seaman's complaint of illness may be so grievous as to justify desertion, we are not presented with that case here, where the complaint of illness was never brought to the captain's attention.