758 F.2d 1063
 1987 A.M.C. 910
 In re INCIDENT ABOARD the D/B OCEAN KING on August 30, 1980.
CITIES SERVICE COMPANY and Getty Oil Company,
Plaintiffs-Appellants, Cross-Appellees,
v.
OCEAN DRILLING AND EXPLORATION COMPANY and Odeco, Inc.,
Defendants-Appellees, Cross-Appellants,
Hydril Company, Defendant-Appellee, Cross-Appellant.
 No. 83-3519.
 United States Court of Appeals,
Fifth Circuit.
 April 26, 1985.
 
 Liskow & Lewis, Charles M. Steen, Larry M. Roedel, New Orleans, La., for Cities & Getty.
 Ross, Griggs & Harrison, Kent Westmoreland, Houston, Tex., for Getty Oil.
 Lemle, Kelleher, Kohlmeyer & Matthews, Geo. A. Frilot, III, Michael A. McGlone, James H. Brown, Jr., New Orleans, La., for Odeco & Ocean Drilling.
 Earl S. Eichin, Jr., New Orleans, La., for Hydril Co.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before JOHNSON and HILL, Circuit Judges, and BOYLE*, District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 Cities Service Company, Getty Oil Company, and Ocean Drilling and Exploration Company (ODECO) all appeal from the judgment of the district court in litigation arising out of a "blow out" and fire aboard the drilling rig the D/B OCEAN KING allegedly caused by a defective blow out preventer manufactured by Hydril Company. The jury found that Hydril Company, the defendant, was seven percent liable for both personal injury and property damage claims asserted by the plaintiffs Cities, Getty, and ODECO. The district court, however, entered judgment against Hydril only on the personal injury claims. Cities, Getty, and ODECO, all assert on appeal that the jury's liability determination should have been applied to the property damage claims as well as the personal injury claims. Hydril cross-appeals challenging the finding of seven percent liability. Cities and Getty also appeal the district court's grant of partial summary judgment in favor of ODECO on Cities' and Getty's claims for the costs of killing the well and for deferred production damages. This Court affirms the grant of partial summary judgment. This Court declines to address the liability findings because this Court determines that the jury was an advisory jury. As such, it was incumbent upon the district court to issue findings of fact and conclusions of law to aid this Court in reviewing the district court's determination of liability. This the district court did not do, and for the reasons stated below, this case is remanded to the district court for it to make those findings.
 
 I. FACTS AND PROCEDURAL HISTORY
 A. The Accident
 
 2
 In August 1980, a blow out and fire occurred aboard the D/B OCEAN KING, a jackup drilling rig owned and manned by Ocean Drilling and Exploration Company (ODECO). The OCEAN KING was then engaged in drilling a well off the coast of Texas pursuant to an agreement between Cities Service Company and Getty Oil Company on the one hand and ODECO on the other. Cities Service Company and Getty Oil Company (collectively referred to as "Cities") were the owners of the lease involved. Cities Service Company was designated as the operator of the lease.
 
 
 3
 Shortly before the blow out and fire aboard the OCEAN KING, the ODECO toolpusher and a Cities Service Company man suspected that a bubble of gas had intruded into the well bore from the surrounding geologic formation. The toolpusher and company man decided to circulate the drilling fluid in the well in an attempt to circulate out the bubble of gas. After the well had been circulated for approximately forty-five minutes, they noticed that drilling fluid coming out of the hole was cut with gas. Shortly thereafter, the blow out preventer was closed and the flow of drilling fluid was directed through the choke. Several hours later the blow out preventer failed at a casing pressure of 3700 p.s.i., allegedly due to the failure of the rubber packing unit in the blow out preventer.
 
 
 4
 The blow out preventer that allegedly failed was a Hydril GL 5000 blow out preventer. At trial, it was contended that if the Hydril blow out preventer had been functioning properly, the seal around the drill pipe would have prevented the escape of gas and drilling fluid up to a pressure of 5000 p.s.i.; instead, it allegedly failed at a casing pressure of 3700 p.s.i. After the alleged failure of the blow out preventer, the casing pressure on the well continued to climb until it reached 7200 p.s.i. Those on board the rig felt a jolt and the pressure dropped to 4700 p.s.i. On the morning of August 30, 1980, gas pressure overcame the casing pressure on the well and ignited, causing the blow out.
 
 
 5
 Five persons died in the incident and several more persons were injured. Cities claimed it expended $40.7 million to control the blow out and extinguish the fire. Cities also claimed $37.5 million in lost profits due to deferred or delayed production. ODECO claimed $41.2 million in property damage, and additional lost profits.
 
 B. The Litigation
 
 6
 Numerous lawsuits arose out of the incident aboard the D/B OCEAN KING. Claims were filed for damage to the rig, property damage to the well, lost profits, and the costs of controlling the blow out and extinguishing the blaze. In addition, claims for wrongful death and personal injury were filed on behalf of the employees of the various corporations involved in the venture. In October 1981, the Judicial Panel on Multidistrict Litigation transferred all cases to the Eastern District of Louisiana, where the cases were consolidated for trial.[1]
 
 
 7
 Prior to trial, ODECO and Cities reached a settlement agreement allocating fault in causing the blow out, but reserving their respective defenses under the drilling contract. Each party contended that the drilling contract waived in advance the damages claimed by the other party, and on this basis motions for partial summary judgment were granted by the district court.
 
 
 8
 In accordance with their settlement agreement, Cities and ODECO were able to settle the personal injury and wrongful death claims prior to trial, taking assignments of the claimants' rights against the remaining defendants. Thereafter, the case proceeded to trial with ODECO, Cities, and Getty (as plaintiffs) suing Hydril[2] under the assignments for personal injury and wrongful death, and also to recover property damages under theories of negligence and strict liability.
 
 
 9
 The jury returned a verdict finding that the blow out and fire resulted from the fault of the parties in the following percentages: Cities Service Company--55%, ODECO, Inc.--38%, and Hydril Company--7%. The jury assigned percentages of fault identically for both the personal injury claims and the property damage claims.[3] The district court expressly approved the jury's allocation of fault to Hydril. Nevertheless, the district court refused to enter judgment for the plaintiffs on the property damage claims. Motions by the plaintiffs to amend the judgment or in the alternative for a new trial were denied. All parties appeal.
 
 II. THE SUMMARY JUDGMENT ISSUES
 
 10
 At trial, Cities sought to recover from ODECO its costs involved in controlling the blow out and extinguishing the fire, as well as its lost profits attributable to deferred or delayed production. ODECO responded as a defense that certain provisions in the drilling contract allocated those risks to Cities. The district court granted summary judgment based on those contractual provisions.[4]
 
 A. Article 12
 
 11
 As one facet of its case, Cities sought to recover from ODECO its (Cities') costs incurred in controlling the blow out and extinguishing the resultant fire. In defense, ODECO asserts that Article 12 of the drilling contract allocated those risks and costs to Cities. Article 12 provides:In the event a well drilled hereunder shall blow out or crater from any cause it is understood that operator [Cities] shall bear the entire cost and full liability of killing the well and bringing it under control (emphasis added).
 
 
 12
 Based on this provision, the district court granted ODECO summary judgment. After reviewing Louisiana law,[5] this Court concludes that the district court was correct in its assessment.
 
 
 13
 On appeal, appellant (Cities) asserts that Article 12 of the drilling contract does not bar its claims against ODECO for the costs of extinguishing the fire and controlling the blow out because that provision does not expressly state that it relieves ODECO of its own negligence. Cities suggests that a specific reference to ODECO's negligence must be included in the contract for the court to find that ODECO is released from its own negligence. In support of its position, Cities refers this Court to several Louisiana and Fifth Circuit cases that might be read to require an express reference to negligence in the context of indemnity agreements. See, e.g., Mott v. ODECO, 577 F.2d 273 (5th Cir.1978), cert. denied, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979); Aymond v. Texaco, Inc., 554 F.2d 206 (5th Cir.1977); Law v. Sea Drilling Corp., 510 F.2d 242, on rehearing, 523 F.2d 793 (5th Cir.1975) (rehearing denied on other grounds); Green v. Taca International Airlines, 304 So.2d 357 (La.1974); Carriage Meat Co., Inc. v. Honeywell, Inc., 442 So.2d 796 (La.App. 4th Cir.1983); Alan Abis, Inc. v. Burns Electronic Security Services, Inc., 283 So.2d 822 (La.App. 2d Cir.1973).[6] Cf. Seal Offshore, Inc. v. American Standard, Inc., 736 F.2d 1078 (5th Cir.1984). This Court notes, however, that the instant case involves an allocation of risk provision in the drilling contract rather than an indemnity provision.
 
 
 14
 After reviewing these cases, and particularly the more recent cases, this Court concludes Louisiana law does not require an express reference to "negligence" in an allocation of risk provision contained in a drilling contract. Rather, the intent of the parties to the contract is deemed to be the most important consideration. The question here is whether the drilling contract unambiguously demonstrates that the parties intended the negligence of ODECO to be covered in Article 12. If so, that provision is enforceable by summary judgment. Seal Offshore, Inc., 736 F.2d at 1080.
 
 
 15
 In Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977) (Polozola I ), the Louisiana Supreme Court held that although a contract that provides for an indemnitee to be indemnified against the consequences of his own negligence is to be strictly construed, the contract will be enforced if the intention to indemnify the indemnitee against losses resulting from his own negligence is expressed in unequivocal terms. The contract involved in Polozola I did contain an express reference to negligence, but this Court has found that the reference to negligence was not controlling in the Louisiana Supreme Court's decision. Battig v. Hartford Accident and Indemnity Co., 482 F.Supp. 338, 343 (W.D.La.1977), approved in, Hyde v. Chevron U.S.A., Inc., 697 F.2d 614 (5th Cir.1983). See Polozola I, 343 So.2d at 1004 (the intent of the parties, rather than the literal terms of the contract, is controlling).
 
 
 16
 Our conclusion that the intent of the parties controls is corroborated by the subsequent decision of the Louisiana Court of Appeals in the same case, Polozola v. Garlock, Inc., 376 So.2d 1009 (La.App. 1st Cir.1979), cert. denied, 379 So.2d 1103 (La.1980) (Polozola II ). In Polozola II, the indemnity agreement at issue lacked an express reference to negligence. Nevertheless, the court determined that the indemnitee was to be indemnified for its own negligence. The court stated:
 
 
 17
 The effect to be given to the indemnity agreement under consideration in the present matter depends upon the intention of the parties, which is the foremost requirement in the interpretation of any contract.
 
 
 18
 The Court concludes that each agreement must be interpreted according to its intended meaning, and that the absence of a specific reference to the indemnitee's "negligence" is not decisive either way.
 
 
 19
 376 So.2d at 1014-15 (emphasis added and citations omitted). See Daigle v. Lang, 377 So.2d 1384, 1391 (La.App. 4th Cir.1979) cert. denied, 377 So.2d 1384 (La.1980).
 
 
 20
 Our conclusion is further supported by this Court's decision in Hyde v. Chevron U.S.A., Inc., 697 F.2d 614 (5th Cir.1983), wherein this Court decided that a specific reference to strict liability in an indemnity agreement was not needed in order for an indemnitee to be indemnified in a case where the indemnitee was held strictly liable. In that case, this Court stated:
 
 
 21
 "Louisiana does not require a specific reference to negligent acts in order for an indemnity agreement or a release to cover claims based on negligent acts. However, the intention of the parties, as inferred from the language of their agreement, must clearly indicate an intention to include negligent acts without the indemnity agreement or the release."
 
 
 22
 697 F.2d at 633 (quoting from Battig v. Hartford Accident and Indemnity Co., 482 F.Supp. 338, 343-44 (W.D.La.1977). Accord Strickland v. Tesoro Drilling Co., 434 So.2d 424 (La.App. 1st Cir.), cert. denied, 441 So.2d 211, 214, 215 (La.1983). Cf. Wiley v. Offshore Painting Contractors, Inc., 711 F.2d 602, modified on other grounds on rehearing, 716 F.2d 257 (5th Cir.1983).[7]
 
 
 23
 This Court recognizes that some conflict still exists among the Louisiana courts regarding the specificity that must be attained in an indemnity provision in order that it cover the negligence of the indemnitee. The Court is convinced, however, that Louisiana law does not require the "magic words" in order for an indemnity provision to cover the indemnitee's own negligence. Likewise, we conclude that a specific reference to negligence is not required in the context of the instant allocation of risk provision. See also Freeman v. Department of Highways, 253 La. 105, 217 So.2d 166, 177 (La.1968); Robillard v. P & R Racetracks, Inc., 405 So.2d 1203 (La.App. 1st Cir.1981); Peninsular Fire Insurance Co. v. Louisiana Debating & Literary Association, 385 So.2d 510 (La.App. 4th Cir.), cert. denied, 393 So.2d 742 (La.1980); Elephant, Inc. v. Hartford Accident and Indemnity Co., 239 So.2d 692 (La.App. 1st Cir.1970).
 
 
 24
 Cities also argues that Article 12 of the drilling contract is ambiguous on its face and that summary judgment was therefore inappropriate. Cities requests a remand of this case so that the district court might accept parol evidence to determine the intent of the parties. Cities asserts that Article 12 merely provides that Cities was to be initially liable for extinguishing the blaze and controlling the blow out, and that Article 12 was not intended to provide that Cities would be unable to recover the portion of those costs attributable to ODECO's negligence. Because two conflicting interpretations of Article 12 are urged, Cities asserts that Article 12 is ambiguous.
 
 
 25
 This Court agrees with the district court that no ambiguity is present. Article 12 states that Cities "shall bear the entire cost and full liability of killing the well and bringing it under control" in the event of a blow out "from any cause." In the instant case, gas intruded into the well bore and the gas pressure eventually overcame the blow out preventer. Such a contingency was certainly foreseeable as a cause of a blow out. Likewise, negligence on the part of both Cities and ODECO in handling the crisis situation was equally forseeable by both parties. The phrase "from any cause" unambiguously includes ODECO's own negligence.
 
 
 26
 Second, the phrase "the entire cost and full liability" contemplates all the costs incurred and the complete liability. The quoted language is altogether inconsistent with Cities' assertion that Article 12 only covered the initial costs of killing and controlling the well. Cities' interpretation contravenes what this Court perceives to be the clear, unambiguous intent of the parties. See Polozola I, 343 So.2d at 1004-05. This Court notes that the instant contract was the result of extensive negotiations between the parties and this Court declines to adopt an interpretation of this contract that contravenes what is perceived to be the parties' intent.
 
 B. Article 17
 
 27
 Cities also challenges the district court's interpretation of Article 17 of the drilling contract. Article 17 provides:
 
 
 28
 Operator [Cities] agrees that contractor [ODECO] shall be released and relieved from all liability and responsibility for damage to or loss of the hole in the event such damage or loss should result from the failure in performance or design of the rig. Contractor being in no way released or relieved from such damage resulting from the sole negligence of the contractor, its agent or employees; provided that in any event the extent of contractor's liability shall be limited to the repair or replacement at its sole cost and expense of the hole so damaged or lost (emphasis added).
 
 
 29
 The district court found that Article 17 barred Cities' claim against ODECO for lost profits attributable to deferred or delayed production because those damages necessarily emanated from loss of the hole for which Article 17 releases ODECO from liability. Cities contends that this construction of Article 17 is erroneous. Cities argues that Continental Oil Co. v. SS ELECTRA, 431 F.2d 391 (5th Cir.1970), cert. denied, 401 U.S. 937, 91 S.Ct. 925, 27 L.Ed.2d 216 (1971), recognizes a distinction between damages to the well itself and loss of profits due to deferred production. Relying on ELECTRA, Cities asserts that "loss of the hole" does not encompass damages from delayed production.
 
 
 30
 ELECTRA does not command a different result from that which the district court reached. First, Article 17 releases ODECO from all liability for loss of the hole, and a common sense interpretation of that provision would indicate that Article 17 includes those damages necessarily flowing from loss of the hole such as cessation of production. Second, ODECO points out that the industry definition of the term "loss of the hole" includes loss of production. Finally, the provision must be read as a whole. As the district court properly noted:
 
 
 31
 I am reinforced in this conclusion by the final, limiting clause of Article 17, which confines Odeco's responsibility for damages due to loss of hole resulting from its sole negligence to cost of repair or replacement, a limitation which necessarily implies a release from a broader range of damages in circumstances where Odeco is not solely at fault.
 
 
 32
 Record Vol. 7 at 1811. This Court agrees. Article 17 contemplates that ODECO is released from all liability for loss of the hole unless ODECO is solely at fault, a finding precluded by the court's adoption of the jury's verdict. In the event ODECO was solely responsible, it would not be liable for any more than repair or replacement of the existing well bore.
 
 
 33
 Cities urges that the final clause of Article 17 means only that ODECO would not have to bear the cost of drilling a replacement well at another location, and that the provision recognizes that the cost of replacing the lost well would be more than the cost of redrilling the lost well. While the parties could have so provided, this Court agrees with the district court that the only meaningful interpretation that can be given to the latter provision in Article 17 is that construction adopted by the district court. While ELECTRA recognizes that damages flow from a delay in production, nothing in that case prevents a party from releasing another from liability for such damages. This is what Cities did in Article 17.
 
 
 34
 For the reasons stated above, this Court affirms the district court's grant of summary judgment for ODECO on Cities' claim for the costs of killing and controlling the well, as well as the grant of summary judgment for Cities' claim against ODECO for damages attributable to delayed production.
 
 III. THE REMAINING ISSUES
 
 35
 Cities and ODECO assert that the district court erred in refusing to enter judgment against Hydril for its share of the property damage sustained by the plaintiffs. In addition, Cities asserts that the district court erroneously instructed the jury. Hydril cross-appeals challenging the liability finding.
 
 
 36
 This Court need not reach the specific errors alleged by the parties, because as an initial matter this Court concludes that the jury empaneled by the district court was an advisory jury. The district court was not required to adopt the findings of the advisory jury, but under Rule 52(a) the district court was required to make findings of fact and conclusions of law adequate for appellate review. This the district court did not do.
 
 
 37
 First, this Court concludes that the jury empaneled by the district court was an advisory jury. On the date of trial, a jury venire was present to try diversity cases along with Jones Act personal injury and death cases. Shortly before the trial was to commence, these jury cases settled. When that occurred only the maritime (and non-jury) claims involving Cities, Getty, ODECO, and Hydril remained. Nevertheless, a jury was selected. Before recessing, the district court heard arguments of counsel on objections to proceeding with a jury, such objections having been made prior to jury selection. Record Vol. 9 at 67-72. Hydril's counsel at that time argued that the jury was an advisory jury. The district court, however, determined that the issues to be presented "should have the jury's attention," although the district court reserved its ruling on the status of the jury. Record Vol. 9 at 73-74.
 
 
 38
 After the jury returned its verdict, the court stated that "the jury's answers to interrogatories and their note [to the court is to] be made part of the record and the predicate for the ultimate judgment of the Court." Record Vol. 15 at 147. The court was then asked by Cities' counsel, "This being an advisory jury, you're going to prepare findings and conclusions adopting their answers to the interrogatories?" Record Vol. 15 at 150-151. The district court responded that it did not necessarily accept the premise that the jury was an advisory jury. Id.
 
 
 39
 The judgment provided that the district court had specifically reserved its determination as to whether the jury was a jury "of right" or an advisory jury.[8] It appears, however, that the district court eventually determined that the jury was advisory, because the district court stated in response to post trial motions, "[the court] kept the jury, then as an advisory jury, and gave them certain interrogatories which were confected with the assistance of counsel for Hydril, ODECO, and Cities, but for which [the court] bore the ultimate responsibility." Supp. Record Vol. II at 5. Nevertheless, some confusion remained and subsequent motions by the parties failed to alleviate the confusion.
 
 
 40
 We must hold that the jury was an advisory jury. The cross and counter claims adjudicated by the district court invoked admiralty jurisdiction. On appeal, the briefs of the parties concede the absence of diversity or federal question jurisdiction. Moreover, ODECO and Cities cite no authority in their reply briefs for the proposition that this jury was not an advisory jury even though Hydril clearly asserts on appeal that the jury served in an advisory capacity. In addition, the district court ordered on February 10, 1982, that third party demands and cross claims were to be tried to the court. Record Vol. 2 at 297. This order was confirmed by the court's judgment, Record Vol. 3 at 737, as well as by the stipulation of the parties dated November 2, 1982. Record Vol. 6 at 1533-35.
 
 
 41
 Given the order of the district court, the stipulation of the parties, the failure by the parties to assert federal question jurisdiction or diversity jurisdiction, and given that maritime claims are not triable to a jury in admiralty, the jury in the instant case was not a jury of right. See Fed.R.Civ.P. 38(e).[9] This Court holds that the jury empaneled by the district court was an advisory jury.
 
 
 42
 This determination impacts on several issues in this case. First, an advisory jury does no more than advise the judge; review on appeal is from the court's judgment as though no jury had been present. Thus, any errors relating to rulings before the jury and instructions to the jury need not be considered. Frostie Co. v. Dr. Pepper Co., 361 F.2d 124, 126 (5th Cir.1966). See also Wilson v. Prasse, 463 F.2d 109, 116 (3rd Cir.1972); Chicago and Northwestern Railway Co. v. Minnesota Transfer Railway Co., 371 F.2d 129, 130 (8th Cir.1967); Aetna Insurance Co. v. Paddock, 301 F.2d 807 (5th Cir.1962). Cf. Whiting v. Jackson State University, 616 F.2d 116, 123 (5th Cir.1980). The district court is not bound by the jury's findings, and it is free to adopt them in whole or in part or totally disregard them. Wynn Oil Co. v. Purolator Chemical Corp., 536 F.2d 84, 86 (5th Cir.1976); Sheila's Shine Products, Inc. v. Sheila Shine, Inc., 486 F.2d 114 (5th Cir.1973). When a district court sits with an advisory jury, the district court is ultimately responsible for findings of fact. Frostie, 361 F.2d at 126. Thus, this Court rejects the contention of ODECO and Cities that the district court was required to adopt the finding of the jury that Hydril was partially liable for the property damage claims.
 
 
 43
 However, review of a judgment of the district court sitting with an advisory jury is under the clearly erroneous standard, Security Mutual Casualty Co. v. Affiliated FM Insurance Co., 471 F.2d 238, 245 (8th Cir.1972); Sheila's, 486 F.2d at 122; it is for that reason that the district court is required to make findings of fact and conclusions of law. Fed.R.Civ.P. 52(a). Aetna Insurance Co. v. Paddock, 301 F.2d at 811. See H. Prang Trucking Co. v. Local Union No. 469, 613 F.2d 1235, 1238 (3rd Cir.1980); Morelock v. NCR Corp., 546 F.2d 682, 689 (6th Cir.1976), vacated on other grounds, 435 U.S. 911, 98 S.Ct. 1463, 55 L.Ed.2d 503 (1978), opinion on remand, 586 F.2d 1096 (1978), cert. denied, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); Acme Boat Rentals, Inc. v. J. Ray McDermott & Co., 407 F.2d 1324, 1325 (5th Cir.1969).
 
 As this Court stated in Acme Boat Rentals:
 
 44
 "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * *." Such findings of fact and conclusions of law are mandatory and must be sufficient in detail and exactness to indicate the factual basis for the ultimate conclusion reached by the court.
 
 
 45
 407 F.2d at 1325. Where the court fails to prepare findings of fact and conclusions of law, the proper procedure is to vacate the judgment and remand the case for such findings. Morelock v. NCR Corp., 546 F.2d at 689; Armstrong v. Collier, 536 F.2d 72, 77 (5th Cir.1976).
 
 
 46
 The finding that this was an advisory jury disposes of the parties' contentions that the jury was erroneously instructed and that the district court was required to adopt the jury's findings in their entirety. This Court is still faced, however, with the determination of whether the district court erred in its liability determination against Hydril on the personal injury claims or in its determination in favor of Hydril on the property claims. The district court has failed to provide this court with findings of fact and conclusions of law sufficient to review its ultimate disposition of the case.[10] See Gupta v. East Texas State University, 654 F.2d 411 (5th Cir.1981). Fed.R.Civ.P. 52(a) is clear in its mandate that the district court must find the facts specially and state separately its conclusions of law thereon. This the district court has failed to do, and for that reason, this Court vacates the judgment of December 16, 1982, with respect to Hydril and remands this case for findings of fact and conclusions of law.
 
 IV. CONCLUSION
 
 47
 The district court's grant of summary judgment in favor of ODECO is affirmed. The contract between the parties bars the claims asserted by Getty and Cities against ODECO and summary judgment was, therefore, proper. The judgment of December 16, 1982, with respect to Hydril is vacated and that portion of the case remanded for findings of fact and conclusions of law such that this court may have an adequate basis for reviewing the decision below. The judgment of the district court is
 
 
 48
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 
 *
 District Judge of the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 Cities informs this Court that the following cases were consolidated for trial: Mrs. Lonnie D. Bessonette, et al. v. Ocean Drilling and Exploration Co., et al., Civil Action 80-4830, (E.D., La.); Cities Service Company, et al. v. Ocean Drilling and Exploration Co., et al., Civil Action 81-46, (E.D., La.); Mrs. Judy Crotwell Snelling, et al. v. Ocean Drilling and Exploration Co., Civil Action 81-215, (E.D., La.); Joe D. Pope v. Ocean Drilling and Exploration Co., et al., Civil Action 81-2S9, (E.D., La.); Mrs. Hattie Ann Blanco, et al. v. Ocean Drilling and Exploration Co., et al., Civil Action 81-1524, (E.D., La.); Clarence Bourne, et al. v. ODECO, Inc., et al., Civil Action 81-2862, (E.D., La.); Mrs. Brenda F. Smith, et al. v. Ocean Drilling and Exploration Co., et al., Civil Action 81-1525, (E.D., La.); Cities Service Company, et al. v. "OCEAN KING", et al., Civil Action 81-4282, (So.Dist. of Texas, Houston Div.); Arthur Sims v. Ocean Drilling and Exploration Co., et al., Civil Action 81-4283, (East.Dist. of Texas, Beaumont Div.)
 
 
 [2]
 Cities, Getty, and ODECO also sued Dresser-Magcobar, a Division of Dresser Industries, Inc. Dresser was dismissed from this case on a motion for directed verdict, made and granted at the close of plaintiffs' case
 
 
 [3]
 In a somewhat unusual step, the jury returned a handwritten note with the verdict explaining its findings. The jury stated in part:
 This jury has concluded that although the rubber unit per se was not defective, the Hydril Company should not be held free of all liability because of what we feel are inadequate warnings of safe maximum pressure levels.
 Record Vol. 6 at 1649.
 
 
 [4]
 ODECO counterclaimed against Cities and Getty for costs incurred in repairing the drilling rig as well as for lost profits. The district court granted Cities and Getty summary judgment on that claim as well. ODECO does not assert that the district court erred in that ruling
 
 
 [5]
 The drilling contract specified that Louisiana law governed the contract, and both parties agree that Louisiana law governs the questions presented for appeal
 
 
 [6]
 Cities and Getty also rely on Jurisich v. United Gas Pipe Line Co., 349 F.Supp. 1227 (E.D.La.1972), written by Judge Rubin. This Court finds that case inapplicable in the instant case. Judge Rubin decided Jurisich according to maritime law, while the instant case is governed by Louisiana law
 
 
 [7]
 Wiley cited Hyde, pointing out that Hyde did not involve a situation where an indemnitee sought to be indemnified for the indemnitee's own negligence; rather, as we have noted, Hyde involves indemnification for strict liability. Nevertheless, we are convinced that Hyde correctly states Louisiana law on this point
 
 
 [8]
 The judgment of December 16, 1982 provided:
 These multidistrict consolidated cases having come for trial before a jury on November 8, 1982, and all claims for injury and death, as well as property claims by Schlumberger Ltd., Schlumberger Offshore Services Division, having been settled by Odeco, Inc. and Cities Service Company prior to commencement of the trial; and the liability issues remaining between defendants in the injury and death actions as well as the liability issues relating to the property damage claims asserted by Odeco, Inc. and Cities Service Company having proceeded to trial before a jury, the Court specifically reserving a determination as to whether the jury was "of right" or "advisory"; and the case having been tried over the course of two weeks and the jury having returned a verdict; and the Court having considered and accepted the jury's verdict and the Court having further entered its own findings and conclusions premised upon the jury's verdict should any appellate court hereafter determine that the jury was advisory as a matter of law; it is now
 ORDERED, ADJUDGED AND DECREED that all claims of Odeco, Inc. and Cities Service Company against The Hydril Company for property damages sustained by Odeco, Inc. and Cities Service Company be and the same are hereby dismissed, each party to bear its own costs; it is further
 ORDERED, ADJUDGED AND DECREED that judgment be and the same is hereby granted jointly in favor of Odeco, Inc. and Cities Service Company and against The Hydril Company for seven (7%) percent of all amounts paid in settlement of the injury and death claims, as well as the property damage claim of Schlumberger Ltd., Schlumberger Offshore Services Division, arising out of the blowout of well No. 1, Block 669, Gulf of Mexico, which occurred on August 30, 1980, each party to bear its own costs. Interest thereon shall be due at the legal rate from the date of this judgment.
 Record Vol. 6 at 1664.
 
 
 [9]
 If indeed the parties' property claims were triable to a jury of right, the parties' stipulation waived that right. Moreover, Hydril asserted in its brief on appeal that the jury was an advisory jury. Neither Cities nor ODECO presents arguments contesting Hydril's assertion. ODECO merely states that it does not "subscribe" to that view, but cites no authority. We treat the failure to respond to Hydril's arguments as a concession that this indeed was an advisory jury
 
 
 [10]
 The district court's minute entry of December 3, 1982, fails to meet the requirements of Rule 52(a). In that minute entry, the district court states its conclusions, but that entry wholly fails to "find the facts specially and [to] state separately its conclusions of law thereon." Fed.R.Civ.P. 52(a). Similarly, other entries in the record are equally void of references to the legal rationale adopted by the district court