Albert JOSEPH, Plaintiff-Appellant,

v.

ST. CHARLES PARISH SCHOOL BOARD, Defendant-Appellee.

No. 83–3209.

United States Court of Appeals, Fifth Circuit.

July 19, 1984.

Jefferson, Bryan & Gray, Trevor G. Bryan, New Orleans, La., for plaintiff-appellant.

Deutsch, Kerrigan & Stiles, Robert E. Kerrigan, Jr., Howard J. Ettinger, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, RUBIN and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Invoking 42 U.S.C. § 1983, Albert Joseph sued the St. Charles Parish School Board alleging that the board violated his constitutional right to due process by failing to provide a hearing within a reasonable time after he was suspended from his job as an elementary school teacher. The district court rejected Joseph's demands for an injunction and a money judgment[1] on findings that the delays were caused or concurred in by Joseph and, in any event, that Joseph suffered no prejudice. We affirm.

### Facts

Joseph was hired as a music teacher in 1955 and became tenured in 1958. In March 1979 he was conducting band classes at Carver Elementary School. On March 14, 1979, Cynthia Tregre reported to the school authorities that her 11 year old daughter Lisa, a band student, had been sexually molested by Joseph during a music exercise. Mrs. Tregre charged that while purporting to teach Lisa proper flute-playing posture and breathing techniques, Joseph had fondled Lisa's breasts and had attempted to place his hand in her panties.

Several members of the school board conducted an immediate investigation, interviewing Lisa, other students, teachers and staff members at Carver Elementary and found substantial basis for the Tregre complaint. On March 16, 1979, the board's Assistant Superintendent for Administration informed Joseph of the charges and preliminary findings and gave Joseph the option of resignation or suspension. Joseph refused to resign and on March 19, 1979, the board suspended him without pay, pending a complete investigation.

On April 29, 1979, the board adopted a resolution scheduling a tenure hearing for May 24, 1979. By letter dated May 1, 1979, the Superintendent of Schools notified Joseph of the hearing, noted the specific charges, and informed Joseph of his rights to counsel, to call witnesses, and to present evidence on his behalf.

Joseph's attorney requested a continuance to prepare for the hearing. The board agreed, and the hearing was rescheduled for June 20, 1979. On June 19, 1979, Joseph filed suit in federal court to enjoin the hearing on the ground that the board had failed to comply with the Louisiana Administrative Procedure Act, La. R.S. 49:951 et seq, particularly as related to prehearing discovery. The June 20 hearing was aborted.

The district court declined to grant the injunctive relief sought but cautioned the school board that any hearing held in violation of the Louisiana APA might be invalidated. The applicability of the APA to school boards was then a disputed question and clarifying legislation was then pending before the Louisiana Legislature. Shortly thereafter, the legislature passed what became Act 578 of the 1979 Regular Session, specifically exempting school boards from

---

1. Nominal damages were not sought; accordingly, that issue has not been considered.

the requirements of the APA. When notified of this action, the district court denied Joseph's petition for injunctive relief.

In the meantime, both Joseph and the School Board evidenced a desire to settle the dispute without a formal hearing, obviously wishing to avoid the unpleasantness and other adverse potentials of the expected hearing. Settlement negotiations finally languished and on July 3, 1980, the board scheduled the hearing for July 21, 1980. Joseph was duly notified.

On July 11, 1980, school authorities were informed that Lisa's father was hospitalized with a diagnosis of terminal cancer. His life expectancy was measured in weeks. The board did not wish to subject Lisa and her family to the additional trauma associated with the hearing and postponed the hearing. Joseph urged that the hearing proceed. The board did not act. Mr. Tregre died on March 16, 1981. On April 22, 1981, after determining that Lisa was psychologically fit to testify, the board rescheduled the hearing for May 20, 1981. Joseph was notified. At the request of Joseph's counsel the hearing was delayed one day. On May 21, 1981, 26 months after the alleged incident and 10 months after the hearing canceled because of Mr. Tregre's terminal illness, the tenure hearing was conducted.

At the hearing Joseph was represented by counsel, was confronted by the adverse witnesses, had an opportunity to cross-examine those witnesses, and was permitted to offer evidence and to personally testify. At the conclusion of the hearing the board found Joseph guilty of willful neglect of duty, incompetency and dishonesty with reference to the incident with Lisa Tregre. The board voted unanimously to terminate Joseph retroactive to the date of his suspension.

## Discussion

██ Because a tenured public school teacher has a property interest in continued employment grounded in state law, *see* La. R.S. 17:443(A), the fourteenth amendment forbids removal without due process of

law. *See Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Joseph does not attack the substantive results of his tenure hearing. Nor does he attack the procedural integrity of the hearing for it is undisputed that the School Board provided him with due notice of the charges against him and with an adequate opportunity to be heard. Rather, Joseph contends that the School Board violated his procedural due process rights by delaying the tenure hearing until more than 26 months had elapsed after his suspension from employment.

██ The district court found that all delays had been caused by Joseph and his attorney and that Joseph had suffered no prejudice from those delays. When delay in the holding of a due process hearing is caused in part by the person whose constitutionally protected property right is being threatened, there is no due process violation provided the hearing is held as soon as circumstances permit. *See Sullivan v. Houston Indep. School District,* 475 F.2d 1071 (5th Cir.1973). Further, to justify relief for a procedural due process failure in an administrative proceeding, there must be a showing of substantial prejudice. *United States v. Lober,* 630 F.2d 335 (5th Cir.1980).

██ The district court granted the board's motion for a directed verdict at the conclusion of Joseph's case-in-chief. Because the trial was to the bench, we treat the board's pleading as a Fed.R.Civ.P. 41(b) motion for involuntary dismissal. *Reimer v. Smith,* 663 F.2d 1316 (5th Cir.1981). Findings of fact in a Rule 41(b) dismissal are reviewed under the clearly erroneous standard of Fed.R.Civ.P. Rule 52(a). In that setting, we will reject the district court's findings only if our review of the entire record impels "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

In our analysis we divide the period from Joseph's suspension on March 19, 1979 to the hearing on May 21, 1981 into two parts:

(1) from suspension to July 21, 1980, and (2) from July 21, 1980 to the tenure hearing.

 We agree with the district court that Joseph and his counsel caused or voluntarily concurred in the delay accruing during the 16-months from the first scheduled tenure hearing date, May 24, 1979, until July 21, 1980.[2] That delay resulted from requests for continuances by Joseph's counsel, Joseph's suit for injunctive relief to prevent the hearing, awaiting action by the Louisiana Legislature, and the parties' mutual decision to attempt to work out a settlement which would obviate the need for a public hearing.

■ Joseph urges us to hold that the district court erred in finding him responsible for the delay between July 1980 and the hearing the following May. We need not address that assigned error because we agree with the district court that Joseph has failed to establish any prejudice occasioned by this additional 10-month delay. *See United States v. Lober.*

The alleged prejudice is in the form of a challenge to Joseph's witnesses. Specifically, doubt was raised by the fact that they remembered with great specificity the events of March 14, 1979, tending to exonerate Joseph of any wrongdoing, but were uncertain about events which took place immediately before and after that critical date. Joseph suggests that his witnesses' ability to remember the events of March 14, 1979 with such precision, would not have been subject to such a telling challenge in July 1980, 16 months after the incident, as they were in May 1981, 26 months post-incident. We are not persuaded. The same challenge would have been available and the same credibility calls would have been required. The trial court's finding that Joseph suffered no

prejudice from the delay is not clearly erroneous.

AFFIRMED.

---

2. Joseph does not contend that the Superintendent acted improperly by suspending him on March 19, 1979 without first holding a due process hearing. Where such immediate disciplinary action is necessary to prevent further disruption of the educational process, no prior hearing is constitutionally required. Of course, the hearing should be held as soon thereafter as practical. *See Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Therefore, the first relevant date with respect to the issue of delay is May 24, 1979, the initial hearing date.