Billy Eugene SULLIVAN, et al.

v.

ROWAN COMPANIES, INC., et al.

Civ. A. No. 88–2520.

United States District Court,
E.D. Louisiana.

May 4, 1990.
Amending Order May 23, 1990.

Benjamin B. Saunders, Blake G. Arata, Jr. and C. Perrin Rome, III, Davis and Saunders, Metairie, La., for plaintiffs.

Richard M. Simses and Steve M. Sikich, Abbott, Best & Meeks, New Orleans, La., for Rowan Companies, Inc.

Jerry L. Saporito and Patricia S. LeBlanc, Bernard, Cassisa, Saporito & Elliott, Metairie, La., for Sears, Roebuck, & Co.

## MEMORANDUM OPINION

MENTZ, District Judge.

Before the Court is the motion of third-party defendant, Sears, Roebuck and Co. ("Sears"), for summary judgment dismissing the cross-claim of Rowan Companies, Inc. ("Rowan") for contribution to maintenance and cure. Prior to the trial, the plaintiff settled his seaman's claims with Rowan and a "Mary Carter" agreement was confected between them. Rowan and the plaintiff then proceeded against Sears in the trial of the main claim, the plaintiff's products liability claim against Sears. This claim was tried before a jury, concluding on January 3, 1990. The cross-claim was tried simultaneously before the Court with the jury acting in an advisory capacity. It was stipulated that at all times pertinent the plaintiff was a Jones Act seaman.

At the close of the plaintiff's case, Sears moved for a directed verdict. The Court reserved ruling, and the defense put on its case. At the close of evidence Sears re-urged its motion for directed verdict. Once again, the Court reserved ruling. After deliberating, the jury returned a verdict on the main claim answering the jury interrogatories as follows:

1. Do you find by a preponderance of the evidence that the socket offered into evidence was the one used by the plaintiff at the time of his accident?

Answer: Yes.

2. Do you find by a preponderance of the evidence that when the socket left Sears' control, it was unreasonably dangerous in normal use because it was defectively manufactured?

Answer: Yes.

3. Do you find by a preponderance of the evidence that the defectively manufactured socket was a legal cause of the plaintiff's injuries?

Answer: Yes.

4. Do you find by a preponderance of the evidence that the acts and/or omissions of Rowan were a legal cause of the plaintiff's injuries?

Answer: Yes.

5. Do you find by a preponderance of the evidence that the plaintiff failed to use reasonable care?

Answer: Yes.

6. Do you find by a preponderance of the evidence that the plaintiff's failure to use reasonable care was a legal cause of his injuries?

Answer: Yes.

7. If you find liability for the plaintiff's injuries, allocate that liability in percentages *that total 100%.*

| | | |
|---|---|---|
| (A) | Sears | 1.5% |
| (B) | Plaintiff | 30% |
| (C) | Rowan | 68.5% |

---

The jury awarded damages as follows:

| | | |
|---|---|---|
| (a) | Past lost wages | $0 |
| (b) | Future lost wages | 560,000.00 |
| (c) | Future medical expenses | 1,700.00 |
| (d) | Past and future pain and suffering | 60,300.00 |
| (e) | Permanent disability | 0 |

---

Following the jury verdict on the main claim, the Court ordered Sears to file within ten days any motions with respect to any claims tried to the Court. Rowan was given five days thereafter to respond. Entry of final judgment on the main claim was reserved until the Court rendered a judgment on the cross-claim. Subsequently, Sears timely filed a motion for judgment notwithstanding the verdict and for dismissal of Rowan's cross-claim for contribution to maintenance and cure. The Court, by order dated January 22, 1990, denied the motion for judgment notwithstanding the verdict as premature since no final judgment had been entered. *See* Fed.R.Civ.P. 50(b). The motion to dismiss the cross-claim was converted by the Court into one for summary judgment and the parties were ordered to submit appropriate memoranda pursuant to Federal Rule of Civil Procedure 56 and Local Rules 2.09 and 2.10E. Upon receiving memoranda from both parties, the Court took the matter under submission.

As noted previously, the Court cannot rule on the motion for judgment notwithstanding the verdict because a final judgment has not yet been entered on the main claim. Final judgment was reserved by the Court pending resolution of the cross-claim, which was tried to the Court with the jury acting in an advisory capacity. The problem is that both the main claim and the cross-claim involve the same primary issue: Was the evidence offered at trial sufficient to support a finding that Sears' socket was defective, and that Sears was, therefore, 1.5% at fault for the plaintiff's injuries. The Court resolves this question with respect to the cross-claim by finding facts and stating conclusions of law. As a result, the pending motion for summary judgment is moot and the Court will enter a judgment on the cross-claim based on the findings of fact and conclusions of law.

To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such; to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

## Findings of Fact

1. Defendant and third-party plaintiff, Rowan Companies, Inc., filed a cross-claim against Sears, Roebuck & Co. under the General Maritime Law seeking indemnification and/or contribution for the cost of maintenance and cure benefits paid to the plaintiff by Rowan. Rowan paid a total of $40,353.67 in maintenance and cure to the plaintiff, Billy Eugene Sullivan.

2. On June 20, 1987, the date of the accident, the plaintiff was employed by Rowan as a maintenance man/mechanic aboard the M/V ROWAN GORILLA II, which was working off the coast of Aberdeen, Scotland in the North Sea. On that date, the plaintiff was assigned the task of rebuilding the emergency fire pump located in the Starboard P—Tank Room. In order to accomplish this task, the plaintiff used a Sears Craftsman ½ inch drive ¾ inch 6–point regular depth socket. This socket was used to remove the ½ inch hexhead cap screws that held the pump housing in place.

3. At the time of the accident, the plaintiff was attempting to remove one of the pump housing fasteners with the Sears socket. While loosening the fastener, the socket split, causing the plaintiff to fall and injure himself.

4. The plaintiff was aware that over-torquing the plated sockets either with a cheater bar or with an impact wrench could result in damage to the tool. Rowan conducted regular safety meetings aboard the M/V ROWAN GORILLA II. At these meetings hand tool care and safety were discussed. According to the minutes of these safety meetings, workers were encouraged to turn in broken or damaged hand tools.

5. The socket in question was manufactured by Easco Hand Tools, Inc. for Sears and was sold to Rowan under the Craftsman label. Rowan provided the socket to the plaintiff for his use while performing his duties as a maintenance man/mechanic on the vessel. The plaintiff was using this

socket when the accident occurred. Rowan also provided the plaintiff with high impact black oxide sockets for use in high torque applications. He was not using one of these sockets at the time of his injury.

6. Two licensed metallurgical engineers testified regarding whether the socket in question was defective. Both were expert witnesses. Dr. Courtney Busch was retained by Sears. The other witness, who testified by deposition, was plaintiff's own expert, Dr. Kenneth Russell. Both experts testified that, in their opinion, the subject socket was not defectively manufactured.

7. Dr. Busch testified that hydrogen embrittlement did not cause the socket to fail. He stated that the cracks in the socket were not a result of the manufacturing process, but rather, occurred after plating. Furthermore, Dr. Busch stated that if cracks had existed at the time of manufacture, then the plating material would have seeped into them when it was applied. Dr. Busch stated that intergranular areas in the socket were not the cause of the break because those areas were not the origin of the fracture. Furthermore, in his opinion the socket failed because it had been abused; namely, another tool was likely driven into the socket and then, through the use of an extension bar, excess torque was applied causing the socket to crack.

8. Dr. Russell also stated that the socket was not defective. Dr. Russell testified that the cause of the socket failure was abuse. He stated that the first fracture on the lower leg was not caused by embrittlement. The first fracture had been present for some time prior to the final failure and the socket was likely used a number of times with that fracture present. He saw no defect in the plating when he examined the socket, and stated that he should have seen plating material in the fracture surface if embrittlement had been the cause of the failure.

### Conclusions of Law

1. A court is not bound to adopt the findings of a jury acting in an advisory capacity. Rather, in all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. *In re Incident Aboard the D/B Ocean King*, 758 F.2d 1063, 1071–72 (5th Cir.1985).

2. The shipowner's liability for maintenance and cure arises out of the employment contract with the seaman; however, a third-party tortfeasor is still liable to reimburse the shipowner for its maintenance and cure payments in proportion to the third-party's fault. *Adams v. Texaco, Inc.*, 640 F.2d 618, 621 (5th Cir. Unit A Mar. 1981). The result is the same regardless of whether the jury award includes maintenance and cure payments. *Id.* at 621 n. 5.

3. Strict products liability is a part of the general maritime law. *East River steam Ship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865–66, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986); *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir.1987). In developing this law, courts have consulted state laws, and also the Restatement of Torts. *Id.* (citations omitted).

4. Even though admiralty suits are governed by federal substantive and procedural law, courts applying maritime law may adopt state law by express or implied reference where state law does not conflict with federal law, or by virtue of the interstitial nature of federal law. *See Palestina v. Fernandez*, 701 F.2d 438, 439 (5th Cir. 1983) (citations omitted). In addition, Louisiana law may be applied in this admiralty case because Louisiana law is consistent with the principles enunciated in § 402A of the Restatement (Second) of Torts. *See Hebert v. Outboard Marine Corp.*, 638 F.Supp. 1166 (E.D.La.1986) (admiralty case adopting Louisiana state law of products liability).

5. Sears is a "manufacturer" within the meaning of Louisiana Products Liability law. La.Rev.Stat.Ann. § 9:2800.53(1)(a) (West Supp.1990). Sears is also a "seller" within the meaning of Restatement (Second) of Torts § 402A(1) (1965). Therefore, in order to recover from

Sears, the plaintiff had to show that the socket in question was defective and unreasonably dangerous for its normal use. *Vickers*, 822 F.2d at 538. *See* Restatement (Second) of Torts § 402A. "Normal use" of a product includes all reasonably foreseeable uses, including foreseeable misuse. *Vickers*, 822 F.2d at 538. The plaintiff must also show that his injury resulted from the defective condition of the product. *Hebert*, 638 F.Supp. at 1170. Finally, he must show that the socket was defective when it left Sears' control. *Id. See also* La.Rev.Stat.Ann. § 9:2800.51–9:2800.59 (West Supp.1990).

■ 6. The defect may also result from a reasonably anticipated alteration of the product. La.Rev.Stat.Ann. § 9:2800.54(C) (West Supp.1990). However, reasonably anticipated alteration or modification does not include changes to or in a product or its operation because the product does not receive reasonable care and maintenance. La.Rev.Stat.Ann. § 9:2800.53(8)(c) (West Supp.1990).

■ 7. The claimant bears the burden of proving the elements necessary to establish that the product was defective. La. Rev.Stat.Ann. § 2800.54(D) (West Supp. 1990). Both metallurgical experts, one of whom was plaintiff's own expert, testified that the socket in question had been damaged by abuse after it left Sears' control. Both experts agreed that this damage ultimately caused the fracture of the socket. Both experts testified that there was no visible sign of hydrogen embrittlement present when they examined the socket. They stated that if hydrogen embrittlement had been a factor in the failure, there would have been a visual indication of embrittlement in the socket plating material. No such evidence was present and, therefore, neither expert tested further for embrittlement.

Considering the foregoing findings of fact and conclusions of law, the Court rules that there was not enough evidence presented for the Court to reasonably conclude that the socket in question failed for any reason other than unforeseeable abuse.

Accordingly,

IT IS ORDERED that there be a judgment in favor of third-party defendant, Sears, Roebuck & Co., and against third-party plaintiff, Rowan Companies, Inc., dismissing Rowan's cross-claim for contribution to maintenance and cure with prejudice; costs in the cross-claim to be borne by said third-party plaintiff.

IT IS FURTHER ORDERED that:

(1) The clerk enter the verdict of the jury on the main claim as a final judgment;

(2) Sears file its reurged motion for judgment notwithstanding the verdict within ten (10) days of the entry of this judgment; and

(3) The motion for summary judgment on the cross-claim is DISMISSED AS MOOT.

### AMENDING ORDER

This Court, by memorandum opinion dated May 4, 1990, dismissed the third-party complaint of Rowan Companies, Inc. against Sears Roebuck & Co. for contribution to maintenance and cure. In its Conclusions of Law, the Court stated that strict products liability has been incorporated into the general maritime law. The Court further stated that while admiralty suits are governed by federal substantive and procedural law, courts applying maritime law may adopt state law by express or implied reference. Courts may also consult the Restatement of Torts.

In the prior opinion, the Court found that Louisiana law could be applied in this admiralty case because it is consistent with the principles enunciated in the Restatement (Second) of Torts. In its Conclusions of Law, the Court made several references to sections of the Louisiana Products Liability Act ("LPLA"), La.Rev.Stat.Ann. § 9:2800.51 *et seq.*, as well as pre-LPLA Louisiana case law and the Restatement (Second) of Torts. However, the plaintiff's accident occurred prior to September 1, 1988, the effective date of the Act.

It is well established that an admiralty court may look to the Restatement as well as analogous state law on products liability. Therefore, the Court's references to pre-LPLA case law and the Restatement

(Second) of Torts is proper. However, in order to eliminate possible confusion over the specific law to be applied in this case, the Court hereby strikes its references to the LPLA. But, the result is unchanged. Under Louisiana products liability law as it existed at the time of the plaintiff's accident, there was still not enough evidence presented at trial for the Court to reasonably conclude that the socket in question failed for any reason other than unforeseeable abuse.

In Conclusion of Law Number (5) of the previous opinion, the Court stated that Sears was a "manufacturer" under the LPLA. Actually, Sears would be considered a "professional vendor" under pre-LPLA jurisprudence. The responsibility of a professional vendor, however, is the same as a manufacturer. *Chappuis v. Sears Roebuck & Co.*, 358 So.2d 926, 930 (La. 1978). Furthermore, the plaintiff would still have to show that Sears' socket was defective and unreasonably dangerous for its normal use. *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir.1987) (applying pre-LPLA law).

Conclusion of Law Number (6) states that under the LPLA a defect may also result from a reasonably anticipated alteration of the product. *See* La.Rev.Stat.Ann. § 9:2800.54(C) (West Supp.1990). However, a reasonable alteration does not include changes to or in a product not reasonably cared for or maintained. La.Rev.Stat. Ann. § 9:2800.53(8)(c) (West Supp.1990). In this respect the LPLA simply codifies the Restatement (Second) of Torts § 402A and the Louisiana case law as it existed at the time the LPLA was enacted. *See Vickers*, 822 F.2d at 538. In the present case, the plaintiff and his fellow workers were aware of what constituted abuse of the plated sockets. They were also aware that damaged tools were to be turned in to their employer, Rowan. However, both metallurgical experts testified at length that tool abuse ultimately caused the socket to fail.

In Conclusion of Law Number (7), the Court stated that the plaintiff bears the burden of proving the elements necessary to establish that the product was defective. La.Rev.Stat.Ann. § 9:2800.54(D) (West Supp.1990). Again, under pre-LPLA law the result is still the same. The plaintiff bears the burden of showing that the product in question was defective and unreasonably dangerous for its normal use. *Vickers*, 822 F.2d at 538. He must also show that the harm resulted from the condition of the product. *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110, 113 (La. 1986). Finally, he must show that the product was defective when it left the control of the manufacturer, or in this case the professional vendor. *See Hebert v. Outboard Marine Corp.*, 638 F.Supp. 1166, 1170 (E.D.La.1986); *Scott v. White Trucks*, 699 F.2d 714, 717 (5th Cir.1983); and *Chappuis v. Sears Roebuck & Co.*, 358 So.2d 926, 930 (La.1978).

The Court finds that regardless of whether the LPLA or its pre-existing equivalent is applied in this case, the result is the same. There was simply not enough evidence presented for the Court to reasonably conclude that the socket was defective when it left Sears' control.

Accordingly,

IT IS ORDERED that the foregoing Amending Order clarifying the Memorandum Opinion of this Court dated May 4, 1990, be ADOPTED as supplemental to and a part of that order.