The CITY OF NEW ORLEANS, et al.

v.

DEPARTMENT OF TRANSPORTATION, et al.

Civ. A. No. 90–0821.

United States District Court, E.D. Louisiana.

July 18, 1990.

---

Russ M. Herman, Steven J. Lane, John B. Loweb, Herman, Herman, Katz & Cotlar, New Orleans, La., for plaintiffs.

Peter R. Steenland, Jr., Louise F. Mikman, Dept. of Justice, Environmental and Natural Resources Div., Washington, D.C.,

Nancy A. Nungesser, Asst. U.S. Atty., U.S. Atty.'s Office, New Orleans, La.

## MEMORANDUM OPINION

MENTZ, District Judge.

On November 1, 1989, the Federal Aviation Administration (FAA) issued a final decision withdrawing FAA approval from a contract entered into by the New Orleans Aviation Board (NOAB) and the Adapt Realty Group (Adapt). The City of New Orleans and NOAB petitioned the Fifth Circuit to review the final decision. By consent of the parties, the petition to review was transferred to this court. The Department of Transportation now seeks this court to grant summary judgment on the plaintiffs' petition to review. For the reasons stated below, the court grants the Department of Transportation's motion for summary judgment and upholds the final decision of the FAA.

### Facts

The FAA, pursuant to its authority under the Airport and Airway Improvement Act (AAIA), 49 U.S.C. app. §§ 2201–2227, was given the authority to provide federal grants to states and localities for airport development and planning.[1] With this authority, the FAA agreed to provide funding to NOAB under four grant-in-aid agreements for the purpose of acquiring land around New Orleans International Airport. NOAB was required to assure the Secretary of Transportation that it would abide by requirements found in 49 U.S.C. app. § 2210, and other federal laws and regulations.[2]

---

1. Federal monies under the AAIA can be used only to pay for "allowable project costs" as defined by section 513 of the AAIA:

   A project cost is allowable if—
   (1) it was a necessary cost incurred in accomplishing an approved project in conformity with the terms and conditions of the grant agreement entered into in connection with the project ...;
   ....
   (3) in the opinion of the Secretary it is reasonable in amount, and if the Secretary determines that a project cost is unreasonable in amount, the Secretary may allow an an

   allowable project costs [sic] only so much of such project cost as the Secretary determines to be reasonable.

   .    .    .    .    .
   49 U.S.C.App. § 2212.

2. Other laws and regulations NOAB was required to abide by included the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601–4655 and its implementing regulations, 49 C.F.R. part 24, FAA standards for land acquisition and relocation assistance for airport development projects, FAA Order 5100.37 (May 7, 1981), and Depart-

NOAB, with FAA approval of NOAB's procedures, proceeded to select a consultant to provide land acquisition consulting services. NOAB selected Adapt as the consultant and notified the FAA of the selection. Soon thereafter, the FAA and NOAB began intensive correspondence regarding Adapt's qualifications. NOAB was requested by the FAA to forward evidence demonstrating that Adapt had been selected in accordance with federal procurement regulations.

On March 15, 1989, the FAA wrote a letter to the City of New Orleans stating that the FAA did not object to the selection of Adapt, subject to FAA approval of the contract. In July 1989, the FAA received a copy of the contract between NOAB and Adapt and returned it to NOAB with questions requiring further resolution.

During this time, the Department of Transportation's Office of the Inspector General (OIG) was investigating NOAB's airport acquisition practices and specifically, the contract between NOAB and Adapt. NOAB furnished the OIG with information regarding the selection of Adapt. On September 21, 1989, the OIG Regional Manager released Audit Report R6–FA–9–15 (OIG report), which recommended against FAA participation in NOAB's contract with Adapt.

The OIG report pointed to several problems with the selection of Adapt. First, the OIG was unable to determine the basis used in selecting Adapt as the most qualified bidder. No interviews of the bidders had taken place, no minutes of the deliberation process had been prepared, and no documents had been provided by NOAB that supported the basis for selection. Only one document evidenced any analysis of the qualifications of the bidders: a comparison matrix which demonstrated that two of the five bidders were more qualified than Adapt.[3] The OIG report specifically found that Adapt had no experience in relo-

cation assistance and questionable experience in airports. Furthermore, the FAA had hired an independent appraiser to value land previously acquired by NOAB (Lambert parcel). The Lambert parcel had originally been valued by two Adapt principals, Al Pappalardo and Jim Thorns. The results of the independent appraisal were significantly different from the results of the Pappalardo and Thorns appraisal. The OIG stated that the disparity resulted from a misapplication by Pappalardo and Thorns of federal appraisal standards and the OIG questioned the performance and qualifications of these Adapt principals under a new contract. As a result of these findings, the OIG recommended that the FAA withdraw its concurrence from the Adapt contract.

In reliance on the OIG recommendation, the FAA withdrew its initial approval of Adapt as a consultant. The FAA recommended that NOAB issue a "stop order" on the contract because any costs incurred under the Adapt contract would not be considered legally allowable under the grant agreement. Under section 2212 of the AAIA, if a project cost is not allowable, the United States may not use AAIA money to fund the cost. 49 U.S.C. app. § 2212.

On October 11, 1989, the plaintiffs filed suit. The district court ordered the FAA to issue a final decision regarding the matter, which the FAA did on November 1, 1989.

### Discussion
#### Review of Agency Action

Because the AAIA does not provide procedures for judicial review of agency action, the plaintiffs' petition for review comes before this court under section 704 of the Administrative Procedure Act (APA), 5 U.S.C. § 704, which provides for review of "final agency action for which there is no other adequate remedy in a court." Under section 706 of the APA, the court can "hold unlawful and set aside"

---

ment of Transportation federal procurement regulations for grants to state and local entities found in 49 C.F.R. § 18.36.

**3.** When asked for more information regarding Adapt's selection, NOAB responded that the se-

lection was made "primarily because of known previous experience of the two firms in dealing with real estate matters for the Aviation Board." NOAB letter of August 9, 1989.

agency findings and decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that fail to meet constitutional, statutory, or procedural requirements. *Id.* § 706(2)(A)–(D). The review must be based on the administrative record. *Id.* § 706.

The plaintiffs allege both that procedural requirements were not met and that the FAA's withdrawal of approval of the contract with Adapt was arbitrary, capricious, or an abuse of discretion. The court will first address the issue of whether the FAA was arbitrary or capricious.

### Arbitrary and Capricious Agency Action

■ The Supreme Court has held that to make the determination of arbitrariness, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). The Court also stated that although the inquiry into the facts must be searching and careful, the ultimate standard of review is narrow. *Id.* A court cannot substitute its judgment for that of the agency. *Id.* The Fifth Circuit, in *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir.1988), has said that "if the agency considers the factors and articulates a rational relationship between the facts found and the choice made, its decision is not arbitrary." If the agency gave at least minimal consideration to relevant facts, its decision should be upheld. *Id.*

This court now must decide whether the relevant facts were considered and whether the relationship between the relevant facts and the agency's decision is rational. If so, the defendant's motion for summary judgment must be granted.

The FAA, in its final decision, first documents the applicable law. Specifically, the FAA points to 49 C.F.R. § 18.36, which requires that a grantee follow certain procedures relating to procurements. *Memorandum Decision of the Federal Aviation Administration*, Nov. 1, 1989, at 5. Section 18.36 requires the grantee to adopt written selection procedures stating that an award will be made only to a contractor with the potential ability to perform the contract successfully. 49 C.F.R. § 18.36. Additionally, section 18.36(d)(3)(v) states that the grantee must evaluate the competitors' qualifications and select the most qualified competitor. *Id.* § 18.36(d)(3)(v). Various other federal statutes and regulations apply to determine the eligibility of project costs for FAA, grant-assisted, airport land acquisitions. *See, e.g.,* Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URAA), 42 U.S.C. §§ 4601–4655.

The FAA argues that it was not arbitrary and capricious in determining both that NOAB violated the Part 18 regulations and that costs incurred in violation of Part 18 were not allowable under section 513 of the AAIA. The FAA based its finding that NOAB violated the Part 18 requirement that "the most qualified competitor" be selected on the OIG report. After reviewing the administrative record, the court cannot say that the OIG report was erroneous or that the FAA was arbitrary and capricious in relying on it. The OIG, on the facts before it, drew a rational conclusion when it found that NOAB's selection process was not in accordance with federal procedures and thus recommended that until NOAB could better support its choice, the FAA should withdraw concurrence in the contract. The record contains no objective evidence that Adapt had better qualifications than the other bidders; indeed, the only comparison in the record between the bidders reveals that Adapt was not the most qualified. As long as the FAA considered the relevant factors, in this case, those factors discussed in the OIG report, and drew a reasonable connection between those factors and its final decision, this court will uphold the agency's decision.

As to the second determination by the FAA—that costs incurred in violation of Part 18 regulations were not allowable costs under section 513 of the AAIA—no serious challenge can be made. NOAB, in order to receive federal funding, had to

assure the FAA that it would comply with the relevant federal regulations, which include Part 18 regulations. If applicable federal regulations were not complied with, the FAA could not hold resulting costs allowable under section 513 of the AAIA.

Although unfortunate, the delay between the FAA's initial qualified approval of NOAB's selection process and contract with Adapt and the FAA's ultimate withdrawal of approval does not render the FAA's final decision arbitrary and capricious. From the start, the FAA questioned NOAB's selection process. The FAA, after being notified by NOAB that Adapt had been chosen as land consultant, began corresponding with NOAB in an attempt to correct perceived deficiencies in the process. Although the FAA, by letter dated March 15, 1989, notified NOAB that it did not object to Adapt's selection, the FAA recommended to NOAB that it seek approval of the contract before executing it. After the FAA's initial cursory review of the contract, it sent a letter dated July 20, 1989 listing additional requirements that must be met before the FAA could approve the contract. However, NOAB proceeded to execute the contract. Before deciding whether to approve the Adapt contract, the OIG report of September 21, 1989 was issued and at that point, the FAA informed NOAB that it could not approve the contract. NOAB was aware that final approval of the contract with Adapt had never been granted by the FAA. Although NOAB may have expected final approval, it had no right to such approval. The FAA had not indicated to NOAB that it had abdicated its final authority to withhold approval of the contract. The FAA was entirely reasonable in deciding, that in light of the OIG report, it could not concur in NOAB's contract with Adapt.

### Right to a Hearing

AAIA

■ The plaintiffs also allege procedural inequities including lack of due process, lack of merit hearings, and the inability to have full administrative hearing. The first place to look in determining if the plaintiffs are entitled to an administrative hearing is the relevant statute, the AAIA. Under section 519(b)(1), the Secretary of Transportation must hold a hearing before she can withhold approval of a grant application for funds apportioned under sections 2206(a)(1), 2206(a)(2), and 2206(b)(5). 49 U.S.C. App. § 2218(b)(1). As the Secretary is not witholding approval of a grant application for funds, section 519(b)(1) is inapplicable. Under section 519(b)(2), a hearing must also be held if the Secretary withholds payment under a grant agreement. 49 U.S.C.App. § 2218(b)(2). However, the agency interpretion is that the hearing requirement of section 519(b)(2) does not apply because the question in the present case is one of determining an allowable cost, not of withholding a payment. In support of its position, the agency refers to its "Policy Manual," which distinguishes between withholding of payment pending the determination of cost allowability and the withholding of payment for noncompliance with a grant condition. The Manual states that section 519(b)(2) applies only to the withholding of payment for noncompliance with a grant condition. Order 5100.-38(A), Chapter 13, Par. 1305 (Oct. 24, 1989). Therefore, the agency need not hold a hearing under 519 before determining cost allowability.

The question this court now must answer is whether the agency's interpretation of the statute is reasonable. The Fifth Circuit in *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir.1983), has stated that in reviewing the agency's interpretation, the court must remember that "the interpretation given [a] statute by the officers or agency charged with its administration" deserves substantial deference. *Id.* at 910 (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980)). Even without granting substantial deference to the agency's interpretation of the statute, this court finds no reason to interpret section 519(b) differently; the agency's reading of the statute's meaning is eminently reasonable.

**1200**

### Due Process

■ Although the statute does not provide the plaintiffs with a right to a hearing, general due process concerns might mandate a hearing. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The first question to answer in determining if due process requires a hearing would be whether the plaintiffs have a liberty or property interest in federal participation in the contract with Adapt. For the purposes of this motion for summary judgment, the Court will assume that the plaintiffs have such an interest and that some process is due.[4]

The *Mathews v. Eldridge* Court has listed three factors that must be considered in determining what process is due: 1) "the private interest that will be affected by the official action," *id.* at 335, 96 S.Ct. at 903; 2) "the risk of an erroneous deprivation of such interest through the procedures used," *id.;* and 3) "the Government's interest." *Id.* The private interest involved is NOAB's ability to have the costs incurred under a contract with Adapt paid for by the FAA. As the FAA alleges, this cost is but one aspect of the larger grant process. NOAB may still proceed to acquire land for the airport and have the costs covered by their grant but it must choose a contractor based on objective evidence that the contractor is the most qualified.

The risk of an erroneous deprivation of NOAB's interest is slight. NOAB was accorded many opportunities to present evidence of Adapt's qualifications and NOAB's reasons for selecting Adapt. A hearing to present this evidence was unnecessary and thus, NOAB did not suffer substantial prejudice from the lack of a hearing. *See Joseph v. St. Charles Parish School Bd.,* 736 F.2d 1036, 1038 (5th Cir. 1984).

Requiring the FAA to hold an oral hearing every time it determined if costs incurred under a contract were allowable would impose a heavy burden on the government. Imposing such a heavy burden on the government is not justified in this case. The burden might be justified if the other two factors revealed harm to the plaintiff from the lack of a hearing. However, in this case, the private interest affected and the risk of an erroneous deprivation were not substantial enough as to overcome the burden that would be placed on the government were a hearing to be required. Thus, due process concerns do not warrant a hearing.

### Conclusion

The court holds that the FAA's decision to withdraw its participation from the contract between NOAB and Adapt was not arbitrary and capricious. In addition, the agency was under no obligation under either the AAIA or general due process concerns to provide a hearing regarding its decision. The court will uphold the agency decision. Accordingly, the Department of Transportation's motion for summary judgment is GRANTED.

---

4. The court, however, doubts the existence of a liberty or property right in FAA participation in the contract and thus, specifically declines to decide this issue at the present time.