**Billy Eugene SULLIVAN, Plaintiff–Appellant,**

v.

**ROWAN COMPANIES, INC., Defendant–Third–Party–Plaintiff–Appellant,**

v.

**SEARS, ROEBUCK & COMPANY, Defendant–Third–Party–Defendant–Appellee.**

No. 91–3197.

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1992.

Richard M. Simses and Carolina M. Broers, Abbott, Best & Meeks, New Orleans, La., for Rowan Companies, Inc.

Blake G. Arata, Jr., Davis & Saunders, Metairie, La., for Billy Eugene Sullivan.

Patricia S. LeBlanc and Jerry L. Saporito, Bernard, Cassisa, Saporito & Elliott, Metairie, La., for defendant-third-party-defendant-appellee.

Before REYNALDO G. GARZA and BARKSDALE, Circuit Judges, and LIVAUDAIS, District Judge.[1]

BARKSDALE, Circuit Judge.

The pivotal issue in this appeal by Billy Eugene Sullivan, a Jones Act seaman, and his employer, Rowan Companies, Inc., is whether the district court committed reversible error in not permitting expert testimony by a witness for Rowan. That testimony was vital to Sullivan's product liability claim (tried to the jury) and to Rowan's similar cross-claim (tried to the court) against Sears, Roebuck & Company. In large part because of that ruling, the district court rendered judgment against Rowan and judgment notwithstanding the verdict against Sullivan. We AFFIRM.

## I.

Sullivan, employed by Rowan as a mechanic aboard an off-shore drilling rig, was using tools, including a Sears Craftsman socket, to loosen bolts. The socket split in half; Sullivan fell and injured his back.

Sullivan sued Rowan and Sears. His claims against Rowan, brought under both the Jones Act, 46 U.S.C. § 688, *et seq.*, and general maritime law, were that his injury was a result of Rowan's negligence and its failure to provide him with a seaworthy vessel and tools. And, under diversity jurisdiction, he claimed, based on Louisiana product liability law, that Sears had manufactured a defective socket and had failed, *inter alia*, to adequately warn him about the dangers inherent in its use. Rowan cross-claimed against Sears, under general maritime law, seeking indemnity and/or contribution for maintenance and cure benefits paid to Sullivan. It alleged that Sullivan's injuries were the result of Sears' failure to provide a product free from defects.

On the eve of trial, Sullivan settled with Rowan, entering into a "Mary Carter" agreement.[2] Rowan and Sullivan then proceeded against Sears. Sullivan's claim was tried before a jury; Rowan's maritime cross-claim, before the district court, with the jury in an advisory capacity.

At both the close of Rowan's and Sullivan's case and of the evidence, Sears moved for a directed verdict on Sullivan's claims and for dismissal of Rowan's cross-claim. On each occasion, the district court reserved ruling, except that at the close of the evidence, it directed a verdict for Sears on failure to warn. In response to interrogatories, the jury found that when the socket left Sears' control, it was unreasonably dangerous in normal use because it was defectively manufactured; that the socket was a cause of Sullivan's injuries; and that the acts and/or omissions of Rowan and Sullivan were also a cause of Sullivan's injuries. Accordingly, it returned a verdict for Sullivan, awarding $622,000; but it assigned liability as follows: Rowan—68.5%; Sullivan—30%; and Sears—1.5%.[3]

Following the verdict, the district court entered findings of fact and conclusions of law on the cross-claim, rendering judgment against Rowan. 736 F.Supp. 722 (E.D.La. 1990). In so doing, it noted:

*Inc.,* 741 F.2d 795, 798 n. 2 (5th Cir.1984); *see also Marathon Oil Co. v. Mid–Continent Underwriters,* 786 F.2d 1301, 1303 n. 1 (5th Cir.1986).

---

1. District Judge of the Eastern District of Louisiana sitting by designation.

2. "The essential terms of a Mary Carter agreement are a release of the plaintiff's cause of action in return for a settlement payment, along with a provision providing that the settling defendant would be reimbursed to some specified degree from any recovery the plaintiff received in a suit against another non-settling defendant." *Wilkins v. P.M.B. Systems Engineering,*

3. The jury awarded damages as follows:

| | |
|---|---|
| Past lost wages | $0 |
| Future lost wages | $560,000 |
| Future medical expenses | $1,700 |
| Past and future pain and suffering | $60,300 |
| Permanent disability | $0 |

[B]oth [Sullivan's] claim and the cross-claim involve the same primary issue: Was the evidence offered at trial sufficient to support a finding that Sears' socket was defective, and that Sears was, therefore, 1.5% at fault for [Sullivan's] injuries.

*Id.* at 724. Based on the expert testimony, it held that "there was not enough evidence presented ... to reasonably conclude that the socket in question failed for any reason other than unforeseeable abuse." *Id.* at 726.

Following judgment being entered for Sullivan against Sears for $9,330 (1.5% of $622,000), the court granted Sears' motion for judgment notwithstanding the verdict, holding that "reasonable jurors could not have concluded that a manufacturing defect in the subject socket caused the injury to ... Sullivan." It "base[d] this finding on the reasons stated in" its opinion, as amended, awarding Sears judgment on Rowan's cross-claim.[4]

## II.

Rowan and Sullivan contend that the district court erred: (1) in ruling that Rowan's expert witness was not qualified to testify in the field of metallurgical failure analysis; (2) in excluding several Sears' television advertisements; (3) in directing a verdict on failure to warn and granting judgment against Rowan's cross-claim and judgment notwithstanding the verdict against Sullivan's claim; and (4) in instructing the jury. (As discussed in part II.F., because we affirm the judgment notwithstanding the verdict, we need not address the jury instruction contentions.)

### A.

Rowan tendered Dr. Jendrzejewski as an expert in metallurgical failure analysis to support the theory that the cause of the failure was hydrogen embrittlement that existed in the socket when it left the manufacturer.[5] Several issues turn on the ruling that Jendrzejewski was not qualified to so testify.

Is the witness—because of his specialized knowledge, skill, experience, training, or education in the relevant field— qualified to express an expert opinion on the topic at issue? Fed.R.Evid. 702. The Advisory Committee Note accompanying Rule 702 reads the broad language of the rule to permit expert testimony not only by experts carrying formal credentials such as university degrees and professional memberships but also by so-called skilled witnesses, whose experiences permit them to testify with authority on a given topic. ....At this [threshold] stage, the only question for the trial court is whether the expert is generally qualified to render an opinion on the question in issue.

*Christophersen v. Allied–Signal Corp.,* 939 F.2d 1106, 1110 (5th Cir.) (en banc), *petition for cert. filed,* (U.S. Nov. 12, 1991) (No. 91–785).[6]

"Trial judges must be sensitive to the qualifications of persons claiming to be expert." *In re Air Crash Disaster at New Orleans, La.,* 795 F.2d 1230, 1233–34 (5th Cir.1986). "Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony." *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1135 (5th Cir.1985).

A trial court has wide discretion to admit or exclude expert testimony. We review challenges to rulings on expert testimony under the "manifestly errone-

---

**4.** Rowan and Sullivan appealed in May 1990. We dismissed, because no Fed.R.Civ.P. 58 judgment had been entered. Thereafter, the district court entered judgment; and Rowan and Sullivan timely appealed.

**5.** The socket was manufactured by Easco Hand Tools, Inc., for Sears and sold by Sears under the Craftsman label.

**6.** "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.

ous" standard. Even when an error is shown, a party is not entitled to relief unless the error substantially prejudices its rights.

*Edmonds v. Illinois Central Gulf R.R.*, 910 F.2d 1284, 1287 (5th Cir.1990) (footnotes omitted).

On voir dire, Jendrzejewski testified that he has a bachelor's degree in earth science education, and a master's and Ph.D. in geology. His master's thesis was in micropaleontology; for his Ph.D., microfossils.[7] After receiving the latter, he taught in the Earth Sciences Department at Tulane University for one year. He admitted that he is not a metallurgical engineer; that he has no other type of engineering background; and that his only formal study in metallurgy was a three-day seminar involving metallurgy and scanning electron microscopes that he had attended ten years earlier. On the other hand, he testified that, since 1976 (immediately following his year at Tulane), he had been employed in private laboratories performing material failure analyses using scanning electron microscopes. He estimated that he had performed between 1,000 and 2,000 projects involving failure analysis, approximately 75 to 80 percent of which involved metals.

The district court ruled that Jendrzejewski was not qualified to give expert testimony in the metallurgical field. Under Fed.R.Evid. 701, however, it allowed him to testify as a lay witness on his observations from his microscopic examination and testing of the socket. This notwithstanding, Jendrzejewski was prevented from opining whether there was a defect in the socket and on the cause of its failure.

Rowan and Sullivan contend that, based on Jendrzejewski's extensive practical experience in metal failure analysis, the district court erred in not allowing him to testify as a metallurgical expert.[8] The district court determined, however, that additional academic or other training or experience in the metallurgical field was needed before Jendrzejewski could qualify to give an opinion regarding the cause of the socket's failure. In this regard, *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167 (5th Cir.1990), is most instructive:

[A]n expert may be qualified on any of the five bases listed [in Fed.R.Evid. 702]. A witness therefore can qualify as an expert even though he lacks practical experience, provided that he has received suitable training or education or has otherwise gained the requisite knowledge or skill. Thus, although the absence of hands-on experience is certainly relevant to the determination whether to accept a witness as an expert, it is not determinative. ....The affirmation of the district court's ruling therefore means merely that if a district court refuses to allow one who has received only academic training to testify as an expert concerning product design, its decision may be affirmed. It clearly does not mean that if a district court faced with the same circumstances rules the other way, its decision will be overturned.

*Id.* at 176–77 (footnote omitted).

Obviously, the same applies to a district court's decision that a witness, with extensive practical experience, lacks sufficient education or other training to testify as an expert in a particular field. Jendrzejewski was not a metallurgical engineer. The district court's ruling, after a most extensive

---

**7.** A microfossil is either a fragment of a larger organism or the entire remains of a minute organism that can be studied only microscopically. Micropaleontology is the study of microfossils. *Webster's Third New Int'l Dictionary* 1427, 1428 (1986).

**8.** Rowan originally attempted to retain Dr. Busch, who later testified as a metallurgical expert for Sears. Due to an ongoing professional relationship with Sears, Busch declined Rowan's offer, and, at Rowan's request, recommended Jendrzejewski to perform a failure

analysis on the socket. Rowan asserts that it then engaged his services, based on this recommendation. Further, at trial, Rowan's counsel represented that Busch had testified by deposition that he felt Jendrzejewski was qualified to perform the analysis. Appellants contend that Busch's status as Sears' expert renders his statements an admission by Sears as to Jendrzejewski's qualifications. We find no merit in these contentions. Obviously, whether Jendrzejewski qualified as an expert is committed to the trial judge's discretion.

voir dire (and a subsequent extensive attempt to qualify Jendrzejewski), was within its discretion; and, therefore, "its decision may be affirmed." *Id.* at 177. This is not to say that a contrary decision would have necessarily required reversal. Rowan and Sullivan have not shown manifest error.[9]

### B.

 It is more than well-established that "we accord considerable deference to the trial judge's evidentiary rulings." *Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1009 (5th Cir.1989). And, "[t]his court will not overturn evidentiary rulings unless substantial prejudice results." *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir.1990). "The party asserting error has the burden of proving that the error prejudiced a substantial right of that party." *Id.* *See* Fed.R.Evid. 103(a) and (d).

The district court granted Sears' motion in limine to exclude its television advertisements. Rowan and Sullivan contend that the commercials (1) established that Sears offered a lifetime warranty on its Craftsman tools, and (2) were relevant to the issue of foreseeable abuse.[10] Sears acknowledged at trial that its Craftsman tools have a lifetime warranty; therefore, admission of the commercials on that issue would be merely cumulative. Concerning foreseeable abuse, the commercials do not involve sockets, especially the type in issue. Furthermore, even without this evidence, the jury found a defect. Accordingly, even if there was error, it was harmless. *See* Fed.R.Civ.P. 61. Rowan and Sullivan do not show the requisite substantial prejudice.

### C.

Rowan and Sullivan next challenge the directed verdict on the failure to warn claim, asserting (1) that the court erred in not allowing Rowan's witness, Fred Liebkemann, to testify concerning inadequate warnings; and (2) that, even without his testimony, sufficient evidence was introduced to establish that Sears failed to provide adequate warnings regarding the dangers inherent in the use of the socket. Rulings on directed verdict motions are reviewed under the *Boeing* standard:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). *Accord 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1286 (5th Cir.1991).

### 1.

 Before trial, the district court granted Sears' motion in limine to exclude any testimony by Liebkemann, a mechanical engineer, on the subject of warnings. Rowan or Sullivan did not object to this ruling.

---

**9.** Rowan and Sullivan also contend that Rowan's witness, Fred Liebkemann, who was accepted by the court as an expert in mechanical engineering, should have been permitted to testify that, in his opinion, the metal was hydrogen embrittled. The district court, noting that such an opinion required the testimony of a metallurgist, ruled that such testimony was outside Liebkemann's field of expertise. At trial, Liebkemann testified that he was not a metallurgical engineer, did not consider himself a metallur-

gist, and that he would defer to the opinion of a metallurgical engineer in the field of metallurgy. The ruling is not manifestly erroneous.

**10.** They also maintain that the commercials are relevant to the warnings issue. However, they did not make a proffer on this point. Because this issue has not been properly preserved for appeal, we do not address it.

Furthermore, they did not proffer any testimony by Liebkemann on inadequate warnings, even when he was recalled for an offer of proof regarding other issues. Needless to say, "[i]n order to preserve their objections for appeal, [Rowan and Sullivan] had a responsibility to make an offer of proof sufficient to allow intelligent review." *Fischer v. Dallas Federal Savings & Loan Association*, 835 F.2d 567, 569 (5th Cir.1988). *See* Fed.R.Evid. 103(a)(2). Their failure to do so precludes review; there is no plain error. *See* Fed.R.Evid. 103(d).

### 2.

■ Alternatively, Rowan and Sullivan maintain that, even without testimony by Liebkemann, they presented sufficient evidence to require submission of this issue to the jury. However, they were first required to prove that Sullivan's injuries "resulted from a condition of the product that made it unreasonably dangerous to normal use." *Bloxom v. Bloxom*, 512 So.2d 839, 843 (La.1987). As discussed in parts II.D. and E., however, the district court correctly held that Sullivan's injury did not result from a manufacturing defect.

In the alternative, "[t]he determination of whether a warning is adequate depends upon a balancing of considerations including, among other factors, the severity of the danger, the likelihood that the warning will catch the attention of those who will foreseeably use the product and convey the nature of the danger to them, the intensity and form of the warning, and the cost of improving the strength or mode of the warning." *Id.* at 844 (citations omitted). Further, "[a]n essential element of the plaintiff's cause of action for failure to adequately warn of a product's danger is that there be some reasonable connection between the omission of the manufacturer and the damage which the plaintiff has suffered." *Id.* at 850.

Two Sears representatives testified that Sears provided no warnings, or instructions, on how to use the socket. Rowan and Sullivan presented no evidence on warnings. Lack of a warning, standing alone, does not establish all of the elements necessary to prevail on this claim. Viewing the evidence in the light most favorable to Rowan and Sullivan, the district court did not err in granting the directed verdict.

### D.

■ As noted, Rowan's maritime cross-claim was tried before the district court, with the jury in an advisory capacity. Rowan and Sullivan assert that the district court erred in disregarding the jury's advisory finding that a defectively manufactured socket was a proximate cause of Sullivan's injuries, and, correspondingly, in ruling against the cross-claim. Of course, a "district court is not bound by [an advisory] jury's findings, and it is free to adopt them in whole or in part or totally disregard them." *In re Incident Aboard D/B Ocean King*, 758 F.2d 1063, 1071 (5th Cir.1985). Our "review of a judgment of the district court sitting with an advisory jury is under the clearly erroneous standard, [and,] for that reason ... the district court is required to make findings of fact and conclusions of law." *Id.* at 1071–72 (citations omitted). *See* Fed.R.Civ.P. 52(a). A finding of fact is clearly erroneous "only if our review of the entire record impels the definite and firm conviction that a mistake has been committed." *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1058 (5th Cir.1991) (citing *Joseph v. St. Charles Parish School Bd.*, 736 F.2d 1036, 1038 (5th Cir.1984)).

In its findings of fact, the district court noted that two licensed metallurgical engineers testified at trial, and that both (*including Sullivan's*) opined that the socket was not defective. 736 F.Supp. at 725.[11]

11. With respect to the first, Sears' expert Dr. Busch, the court stated:

Dr. Busch [Sears' expert] testified that hydrogen embrittlement did not cause the socket to fail. He stated that the cracks in the socket were not a result of the manufacturing process, but rather, occurred after plating.

Furthermore, Dr. Busch stated that if cracks had existed at the time of manufacture, then the plating material would have seeped into them when it was applied. Dr. Busch stated that intergranular areas in the socket were not the cause of the break because those areas were not the origin of the fracture. Further-

Based on their testimony, the district court found that Rowan and Sullivan had not presented sufficient evidence for it to conclude that the socket "failed for any reason other than unforeseeable abuse." *Id.* at 727.

"Strict products liability is part of the general maritime law." *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987) (citing *East River Steamship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986)). In developing general maritime law, courts may apply state law. *Id.* The district court applied Louisiana law, which required appellants to prove that: (1) the socket was defective and unreasonably dangerous for its normal use; (2) Sullivan was injured as a result of the defect; and (3) the defect existed at the time it left Sears' control. *Vickers*, 822 F.2d at 538; *Scott v. White Trucks*, 699 F.2d 714, 716–17 (5th Cir.1983) (applying Louisiana law).[12] Normal use of the socket "include[d] all reasonably foreseeable uses, including foreseeable misuse." *Vickers*, 822 F.2d at 538.

Rowan and Sullivan assert that the evidence proved that the socket was defectively manufactured, based on their theory that it had a condition of hydrogen embrittlement when it left the manufacturer. Although the hydrogen embrittlement issue was raised continually during trial, the evidence which Rowan and Sullivan rely upon falls far short of showing that the findings of fact were clearly erroneous.

Rowan and Sullivan were unable to present any evidence that hydrogen embrit-

tlement was the cause of the failure. As noted, although Dr. Jendrzejewski testified extensively regarding his examination and testing of the socket, he was not permitted to express an opinion on the cause of failure. Nor was there any other proof that this asserted defect was the cause. Furthermore, Sears' *and Sullivan's* experts testified that: (1) the socket was not defectively manufactured; (2) hydrogen embrittlement did not cause the socket to fail; and (3) the failure was due to abuse.

The district court's findings of fact are not clearly erroneous. We find no error in its holding for Sears on the cross-claim.

### E.

Rowan and Sullivan further contend that the district court erred in granting Sears a judgment notwithstanding the verdict on Sullivan's claim. Therefore, in reviewing the decision to set aside the jury's verdict, we apply the earlier quoted *Boeing* standard. *E.g., Texas Commercial Business Systems, Inc. v. Federal Communications Corp.*, 898 F.2d 460, 461 (5th Cir.1990).

As noted, Rowan and Sullivan raised the same factual and legal issues for the claim that the socket was defectively manufactured. Accordingly, considering the evidence in the light most favorable to Sullivan, and for the reasons stated in part II.D., the district court held correctly that "reasonable jurors could not have concluded that a manufacturing defect in the subject socket caused the injury to ... Sullivan."

---

more, in his opinion the socket failed because it had been abused; namely, another tool was likely driven into the socket and then, through the use of an extension bar, excess torque was applied causing the socket to crack. 736 F.Supp. at 725.

The second metallurgical engineer was Sullivan's expert, Dr. Kenneth Russell, a professor of metallurgy at the Massachusetts Institute of Technology. The district court stated:

Dr. Russell also stated that the socket was not defective. Dr. Russell testified that the cause of the socket failure was abuse. He stated that the first fracture on the lower leg was not caused by embrittlement. The first fracture had been present for some time prior to the final failure and the socket was likely used a number of times with that fracture

present. He saw no defect in the plating when he examined the socket, and stated that he should have seen plating material in the fracture surface if embrittlement had been the cause of the failure. *Id.*

12. In its original conclusions of law, the district court referred to (1) the Louisiana Products Liability Act (LPLA), La.Rev.Stat.Ann. § 9:2800.51 *et seq.;* (2) pre–LPLA Louisiana case law; and (3) the Restatement (Second) of Torts. 736 F.Supp. at 726. Because the incident occurred before the effective date of the LPLA, the district court amended its conclusions and applied only pre–LPLA case law and the Restatement. *Id.*

F.

The final issues concern the jury instructions.[13] As stated earlier, we need not reach them. Because the jury was advisory for the cross-claim, asserted errors in the instructions are irrelevant to it. "[A]n advisory jury does no more than advise the judge; review on appeal is from the court's judgment as though no jury had been present. Thus, any errors relating to rulings before the jury and instructions to the jury need not be considered." *D/B Ocean King*, 758 F.2d at 1071 (citing *Frostie Co. v. Dr. Pepper Co.*, 361 F.2d 124, 126 (5th Cir.1966)).

Likewise, any errors in the instructions for Sullivan's claim are irrelevant, in light of our upholding the judgment notwithstanding the verdict and the directed verdict. Because the district court's rulings implicitly mean that submitting them to the jury was unnecessary, the manner in which the instructions may, or may not, have affected the verdict is not material. *See Matherne v. Wilson*, 851 F.2d 752, 762 (5th Cir.1988) ("Implied in our discussion is the conclusion that this case properly could have been resolved on a motion for directed verdict; thus, contentions over the jury charge are battles of no relevance to the war.")

III.

For the foregoing reasons, the judgment is

AFFIRMED.

---

13. Appellants contend (1) that the jury should not have been instructed that it could consider the fault of Rowan and Sullivan, and (2) that the court did not correctly instruct the jury on product liability law.